## PRICE *vs.* POWELL.

An action on the case against a carrier for the loss of goods is properly brought in the name of the consignor, where he is the owner of the property.

And in such a case the consignee, where he is a mere agent, having no interest in the goods, is a competent witness for the consignor.

The consignee is presumptively the owner of the property shipped, but this presumption may be rebutted.

Where the master of a vessel signs a bill of lading which states that the property is "shipped in good order," in an action against the owners for an injury thereto, the burden is on the defendants to show that the injury happened before the goods came to their hands.

In an action against the ship owner, the declarations of the master concerning the injury to the goods, made before he has discharged his duty by delivering the goods according to the bill of lading, are competent evidence for the plaintiffs.

A delivery of the goods upon the wharf at the place to which they are consigned does not discharge the carrier unless notice be given to the consignee.

And after notice to the consignee the carrier still continues liable until the consignee has had a reasonable time to remove the goods.

Whether it may not be shown in exoneration of the carrier, that by a local custom of the place to which the goods are consigned, the delivery is complete by landing them on the wharf, *quere.*

A bill of exceptions should give a plain and concise statement of the facts out of which the questions of law arise, and the evidence should not be set forth in detached and scattered parcels.

EDMUND PRICE and Elijah B. Price brought an action on the case in the common pleas of the city of New-York, against Powell and others as common carriers. On the trial it appeared that on the 30th of May 1846, the plaintiffs shipped at New-York on board the brig "Belle," S. Myers master, some pieces of marble commonly called tomb tops, consigned to one Hotchkiss at Wilmington, North Carolina. The bill of lading was as follows: "Shipped in good order and well conditioned, by E. Price & Son, on board the brig called the "Belle," whereof S. Myers is master, now lying at the port of New-York and bound for Wilmington N. C., 6 boxes of marble [and other articles] marked and numbered as in the margin, to be deliv ered in like good order and condition at the port of Wilming

ton N. C., (the danger of the seas only excepted,) unto Guy C. Hotchkiss or his assigns, he or they paying freight for the same as customary with primage and average accustomed. In witness whereof, &c.    Dated New-York, May 30th, 1846.

S. MYERS."

The defendants were proved to be the owners of the brig. The deposition of Hotchkiss the consignee, taken on commission, was read on behalf of the plaintiffs, after an objection to his competency, on the ground of interest, had been made and overruled.    He testified among other things that on the 8th or 9th of June, 1846, he heard of the arrival of the brig at Wilmington, and that late in the evening of the same day he visited her at the wharf of G. W. Davis, to whom she was consigned, and was then informed by one of Davis' clerks that the marble was unloaded and was lying on the wharf.    On the next morning he went to the wharf, and on examining found that some of the tomb tops were broken.    After he had opened the first box containing one of the pieces and found it broken, he called Myers, the master of the brig, showed it to him, and in his presence opened the other boxes.    The master stated " he did not see how they could have been broken while on the vessel, as they were stowed on their edges leaning against the stanchions of the brig."    He said farther that he would see the plaintiffs on his return to New-York and do what was right in the matter.    The evidence as to what the master said on this occasion was duly objected to, but the objection was overruled.

One Nash was called as a witness, who testified that he had been a seafaring man for forty years, and had been in the habit of carrying marble and was familiar with the proper mode of stowing it in sea-going vessels.    The witness was asked the question whether in his opinion the marble in question was properly stowed on the brig " Belle."    This was objected to on the ground that the opinion of a witness was not proper evidence upon the subject matter of the inquiry.    The objection was overruled and an exception taken.

In the course of the trial the defendants offered to prove that by the custom at Wilmington goods were always delivered on

the wharf, and that this was deemed the termination of the carrier's duty, and a good delivery to the consignee. The testimony was objected to on the part of the plaintiffs and the objection sustained. The defendants excepted. Subsequently however the defendants, without objection, gave evidence concerning the custom in question, but it failed to prove that the custom was as assumed in the offer.

When the evidence was closed the defendants' counsel requested the court to charge the jury 1. That the action could not be brought in the name of the present plaintiffs, but should have been brought in the name of Hotchkiss the consignee. 2. That the plaintiffs could not recover without showing that the marble was broken whilst in the possession of the defendants and before the termination of their duty as carriers. 3. That by the plaintiffs' own showing the duty of the defendants, as carriers, was ended by the delivery of the marble on the wharf at Wilmington, and the marble was not shown to be unsound at that time. The court refused to charge as requested, and did charge, among other things, that a delivery at the wharf was not sufficient to exonerate the defendants from their liability as carriers without notice to the consignee: also that the consignee had a reasonable time after notice within which to take possession of the property, and that if the marble was broken while on the wharf over night, the consignee not having had a reasonable time to remove it before the next morning, the carriers would still be liable. The defendants excepted. The plaintiffs had a verdict, and after judgment the defendants appealed to this court.

*M. T. Reynolds,* for appellants.

*J. M. Van Cott,* for respondents.

Bronson, Ch. J. This case has been made up in a loose and disjointed manner, and with little regard to the rules which ought to govern in framing bills of exceptions. Instead of giving, as it should, a plain and concise statement of the facts out

of which the questions of law arise, the bill is made up of portions of the evidence, and these are set forth in detached and scattered parcels; making it necessary to hunt through the whole case, and draw inferences, to get at the facts relating to a single one of the many questions made by the bill; and rendering it difficult, if not impossible, to determine what are the legal rights of the parties. If it be proper to review such a case, every doubt about facts should be turned against the party making the bill.

Although the consignee is presumptive owner of the property shipped, it is a presumption which may be, and which was, I think, sufficiently rebutted in this case. As I understand the evidence, the property was not consigned to Hotchkiss as owner, but as the agent of the plaintiffs, who were the owners of the property at the time of the alledged injury by the carriers. And besides, it appears that there was other evidence, which is not set forth in the case, going to prove that the plaintiffs, and not the consignee, were the owners of the property. The plaintiffs must be regarded as owners; and this disposes of two of the exceptions. As the plaintiffs were owners, the suit was properly brought in their names. And as Hotchkiss was but an agent, he had no interest in the event of the suit, and was a competent witness for the plaintiffs.

As the master signed the usual bills of lading stating that the property was "shipped in good order and well conditioned," the burden lay upon the defendants to show that the marble was broken before it came to their hands. The evidence bearing upon that point made it a proper question for the jury; and the case does not show that the question was not submitted to their consideration. The case does not profess to give the whole of the judge's charge.

The conversation between Myers the master, and Hotchkiss the consignee, at the time the latter opened the boxes and found the marble broken, related to the acts and duty of the master concerning the subject in hand; and the conversation occurred before the master had fulfilled his obligation by delivering the property to the consignee. No evidence concerning the usage

at Wilmington had been given at the time the question about proving this conversation was made ; and clearly, landing the property on the wharf was not a good delivery, without, at the least, giving notice to the consignee. (*Ostrander* v. *Brown*, 15 *John.* 39 ; *Gibson* v. *Culver*, 17 *Wend.* 305 ; *Fisk* v. *Newton*, 1 *Denio* 45.)

There is room for doubt whether the evidence which the defendants offered concerning the custom at Wilmington should not have been received. But it is not necessary to consider that question ; for as I understand the case, the defendants were afterwards allowed to give evidence of the custom without objection. And it turned out, as is often the case, that the defendants had offered to prove more than they could establish. The proof does not show that, by the custom, delivery on the wharf, without any thing more, is a good delivery to the consignee. On the contrary, the proof shows, that according to the custom, notice must be given to the consignee. The witness says it is not customary for the captain to give the notice; but the consignee of the vessel, or his clerk, gives it. The consignee of the vessel, as well as the captain, was the agent of the defendants, and it matters not which agent was bound to give the notice. The defendants had not discharged their obligation as carriers, until they had, either in person or by some agent, given the notice.

On the case proved, the judge was clearly right in charging the jury, that delivery at the wharf was not sufficient, without notice to the consignee.

Davis was the consignee of the vessel, and he actually gave notice, by one of his clerks, to Hotchkiss, that the marble was out of the vessel and lying on the wharf. This was late in the evening ; and on the morning of the next day Hotchkiss went to the wharf, opened the boxes, and found the marble broken. The question whether Hotchkiss acted within a reasonable time after he had notice was submitted to the jury.

Nash was an expert, and being such, his evidence was properly received.

Of the other questions in the case it is enough to say, that

they have been considered, without finding that any error was committed on the trial. I am of opinion that the judgment should be affirmed.

Judgment affirmed.