JARED D. MATTESON AND SARAH MATTESON, his wife, *vs.* THE NEW YORK CENTRAL RAILROAD COMPANY.

It was the intention of the legislature, by the act of 1860 amending section 399 of the Code, to make husband and wife competent witnesses, the one for or against the other, in all cases where they were parties to the action.

The general rule is, that the declarations of an agent, made in reference to the subject matter of the agency, while engaged in the business, bind the principal.

The declarations of an agent of a railroad company, who was in charge of a gang of men employed in relaying ties, that there was sufficient time to relay them before the arrival of the next train, are admissible against the company, being a part of the *res gestæ*.

In an action by husband and wife, against a railroad company, to recover damages for a personal injury to the wife, occasioned by the negligence of the defendant, statements of the wife, in regard to her health and condition, made to a physician called to prescribe for her, after the injury, may be received to show the symptoms for which he prescribed, and the disease, if any, under which she was then laboring. The jury has the right to know for what disease, or symptoms of disease and injury the physician prescribed and for the evidence of which he relied, necessarily, on the patient's statements.

If the object and effect of the evidence is to satisfy the jury as to her condition at the time the physician was called, it is competent to give her declarations for that purpose.

It is competent, in an action to recover damages for personal injuries, for the plaintiff to show that the injuries were permanent—that she will not probably recover from the effects.

And in support and in confirmation of an opinion expressed by the physician,

Matteson *v.* New York Central Railroad Company.

that the plaintiff will not get well, it is competent to prove by him—after he has stated her symptoms, and the cause which, in his opinion, had produced them—at what period after the injury the plaintiff would be most likely to begin to improve, if she were going to improve at all.

A physician may be asked to give his opinion as to the cause of a spinal difficulty he has testified a patient was afflicted with. But in such a case be must state the facts on which his opinion is founded.

All questions of negligence properly belong to the jury, and it is the duty of the court to submit all such questions to them. And it is the province of the jury to say what acts or omissions of the defendant constitute negligence.

Repairs of a railroad track were attempted to be made without interfering with the passage of the trains. The times of the passage of such trains were well understood, and to insure safety it was only necessary that the employees of the company should have an accurate time-piece, to enable them so to conduct the work that the track should be in order, on the arrival of the next train. *Held* that it was the duty of the company to see that the men employed in labor of that kind were furnished with a proper time-piece.

And it appearing, from the evidence, that the officers of the company paid no attention to that subject, but left the foreman to procure, and attend to the regulation of, their own watches; it was *held*, that on this evidence the jury had the right to pass, and say whether it was or was not negligence in the company thus to conduct itself.

In an action to recover damages for personal injuries caused by negligence, it is a question for the jury whether there was mental anguish resulting from the injuries, or not; and if there was, the plaintiff is entitled to be compensated for it.

The right of recovery is not limited to past bodily pain and suffering, but the party is entitled to compensation for such future suffering as the evidence renders it reasonably certain must necessarily result from the injury.

ACTION brought in October 1859, to recover damages for an alleged injury to the plaintiff Sarah, on the 7th of July, in that year, caused by the defendant's cars, in which she was a passenger, running off the track. The cause was tried in June 1860, when the plaintiffs had a verdict. The general term set this aside and ordered a new trial. The cause was again tried in June 1860, before Justice ALLEN and a jury, when a verdict was rendered in favor of the plaintiffs for $5000 damages. From the judgment on this verdict the defendant appealed. Prior to the commencment of the present suit, an action had

been brought against the defendant, by the husband alone, and a recovery had. (*See* 35 *N. Y.* 487.)

*F. Kernan,* for the appellant.

I. The court erred in permitting Mrs. Matteson to be sworn as a witness. 1. The action was not as to her separate estate, or for her separate benefit. Her husband was the real party in interest. (*a.*) He, and not she or her estate, is liable for costs, if the defendant succeeds. (*b.*) If there is a recovery, it belongs to him. This was so before the act " for the more effectual protection of the property of married women," and this act does not change the law in this respect. (*Laws of* 1848, *ch.* 307. *Laws of* 1849, *ch.* 528.) (*c.*) The law of 1860 does not affect this case. (*Laws of* 1860, *ch.* 157. 2 *Kern.* 202.) 2. On the grounds of public policy, the wife is not, under the Code, a competent witness for or against her husband, when she is not a party. (2 *Sandf.* 340. 4 *id.* 596. 8 *How. Pr.* 297. 5 *Seld.* 153.) 3. On the same ground, she is excluded when she is united as a party with her husband in an action prosecuted or defended by him. The statute authorizing a party to be examined as a witness, has not changed this rule of law. (*Laws of* 1848, *ch.* 559, § 344. 5 *Barb.* 156. *Laws of* 1857, *ch.* 744, *amending* § 399 *of the Code.* 15 *How. Pr.* 165. *Id.* 169. 26 *Barb.* 612, *and cases cited.* 3 *E. D. Smith,* 355. *See cases supra.*) 4. The amendment to section 399 of the Code, enacted in 1860, does not authorize the wife to be a witness in a case, when she could not be under the statute as it was previously. (*Laws of* 1860, *ch.* 787.)

II. The court erred in overruling objections taken to evidence and permiting it to be given. 1. The witness Perkins was not competent to give an opinion as to the bodily health of Mrs. Matteson. The question called directly and specially for his opinion; and notwithstanding the objection was specific that he was not competent to

give an opinion, and should state facts, the objection was overruled and the question allowed. This was error. (*Norman* v. *Wells*, 17 *Wend.* 136. *Paige* v. *Hazard*, 5 *Hill*, 603. *Giles* v. *O'Toole*, 4 *Barb.* 261. *Harger* v. *Edmonds*, *Id.* 256.) 2. The statements of Mrs. Matteson, subsequent to the time of the accident, as to her health and condition, were not competent, and should have been excluded. (*a.*) The evidence was not confined to complaints or statements made at or about the time of the accident. (*Caldwell* v. *Murphy*, 1 *Kern.* 416, 419, 420.) (*b.*) Mrs. Matteson had testified as a witness, and her declarations when not on oath, were not competent to prove the facts stated, or to sustain or corroborate her. 3. It was error to permit the physicians to give an opinion as to whether her difficulty was caused by disease or violence. (*a.*) They had stated what, in their opinion, her disease was. It was competent for them to state, and they did state, the causes which might produce it. The effect would be the same whether produced by violence or some of the other causes named. (*b.*) In such a case, to allow the physicians to give an opinion as to the particular cause in this instance, is to substitute their conclusion for that of the jury. They should have been confined to stating what her difficulty was, the causes which might produce it, and the symptoms when produced by the various causes, if they differed. To allow Drs. Wolcott and Preston, who never saw her till October, to give an opinion that violence was the cause, is equivalent to allowing them to give as a conclusion of fact, that the defendant caused her condition, rather than that it resulted from the other causes which they state might produce it. 4. The opinions that she would never recover; that her disease was incurable; were not competent. These opinions are mere speculations, and not evidence.

III. The learned judge erred in refusing to instruct the jury upon this evidence, that the plaintiffs were not enti-

tled to recover damages for, or on account of, past or future mental pain or anguish. 1. Mrs. Matteson did not suffer any serious wound or bruise, which would cause mental anguish from acute physical suffering. The claim was, that from concussion her spine became diseased, and that she was in danger of becoming helpless, and dying from paralysis; that this apprehension, the fear of death, &c., would cause her mental anguish. 2. This mental anguish, we submit, was not the direct legal consequence of the defendant's negligence, and, therefore, damages therefor could not be recovered. (17 *N. Y.* 54, *and cases cited. Sedg. on Dam.* 57, *&c.*) 3. But it is submitted there could be no recovery for mental pain and anguish in this case. If there could, every passenger on the train had a right to recover damages of the defendant. Each, at the time, not after, suffered more or less mentally. (*a.*) The general principle upon which damages are awarded, is that of giving pecuniary compensation which will put the party in the same position which he would have occupied if not wronged or injured. (2 *Pars. on Cont.* 432.) (*b.*) The law does not profess, in a large class of cases, to entirely compensate the party injured. It gives only that compensation which a compliance with certain fixed rules of law will afford, leaving the sufferer to bear, without redress, the residue. (*Sedg. on Dam.* 5 6, 37, 38, 57, 58.) (*c.*) Aside from a few exceptional cases where exemplary or punitory damages are allowed in the discretion of the jury, no damages can be recovered, unless the law affords a rule of measuring them, and they can be estimated upon and according to evidence. The law does not permit a jury to award damages arbitrarily, by way of compensation, without evidence, upon mere speculation as to the past or future. (*Sedg. on Dam.* 3.) (*d.*) The amount of mental pain which a party has sustained, is wholly incapable of being proved, to a jury. From the nature of things, the quantity of pain cannot be proved by evidence.

Matteson *v.* New York Central Railroad Company.

nor can any legal rule of measuring it pecuniarily be laid down. (*e.*) As to physical pain there can be evidence; the jury may arrive at its intensity and duration, from the evidence. (*Ransom* v. *N. Y. and Erie R. R. Co.*, 15 *N. Y.* 415.) But how can a mental wound be described or estimated? If a jury must give damages for mental pain, they must do it without any guide from law or evidence. They are entirely uncontrollable; their discretion or their passion can neither be guided by law or evidence, or reviewed by the court. (*f.*) But in this case they were allowed to give damages for future mental pain; for mental pain which she might thereafter suffer. We submit that upon this evidence this was erroneous. All the objections to allowing a jury to give damages for mental pain, above suggested, have tenfold weight against a direction to award damages for the pain she might thereafter endure; or which they might guess she would thereafter endure. It is submitted that this was directing the jury to speculate without evidence, to give a verdict which could not be in accordance with or regulated by any rule of law, or based upon evidence. This was especially objectionable in this case, where the plaintiff did not suffer acute pain; where the mental pain could only be from apprehensions of paralysis or death. It is believed compensation for such anguish is not given by law.

IV. The judge erroneously declined to charge, that if the jury, from the evidence, were satisfied that Mrs. Matteson was in feeble health, and that her condition was produced by fright and excitement caused by the accident, and not by violence, the plaintiffs were not entitled to recover. 1. There was evidence from which the jury might well have come to this conclusion. (*a.*) She had been for years in feeble health; her constitution was greatly broken down and exhausted. She had, previous to the accident, the symptoms which are now claimed to exist in an aggregate degree. (*b.*) The evidence was that she

sustained only slight external injury; some slight bruises, and none which caused or indicated the condition she was claimed to be in. 2. Carriers are not responsible for the effects of the mental operations of passengers who become alarmed when an accident occurs. (*Boyce* v. *Andrews*, 2 *Pet.* 150. *Palmer* v. *The Grand Junction R. W. Co.*, 4 *Mees. & Welsb.* 749. *Clarke* v. *Roch. and S. R. R. Co.*, 14 *N. Y.* 570.) 3. In accordance with a well settled rule, where a passenger by his own act, conduct or condition contributes in causing the injury, he cannot recover damages of the carrier. It is not material whether this act, conduct or condition of the passenger is voluntary or not. 4. The defendants are not responsible for remote or indirect consequences of the alleged negligence. They are only responsible for the damages which were the natural, direct and proximate consequence of negligence. (2 *Greenl. Ev.* § 256. *Knight* v. *Wilcox*, 14 *N. Y.* 413, 415 *to* 418. *Terwilliger* v. *Wands*, 17 *N. Y.* 54. *Crain* v. *Petrie*, 6 *Hill*, 522.) 5. Paralysis, produced in a feeble and nervous woman as the subsequent effect of fright and excitement, which were caused by an accident, is not the natural legal consequence of the negligence which caused the accident. (*a.*) Otherwise, in a case where no accident in fact occurred, but through the negligence of the defendant one is imminent, a passenger who thereby becomes alarmed and excited, and this alarm and excitement causes subsequent sickness, can recover damages arising from such sickness. (*b.*) Or, in such a case, the passenger who, impelled by fright, leaps from the cars, could recover damages on the ground that the negligence of the defendant caused the fright. 6. The fright and excitement which caused the paralysis or sickness were the direct and proximate consequences of the defendant's negligence. The paralysis or sickness thus caused, is the direct and proximate consequence of the negligence of the defendant.

Matteson *v.* New York Central Railroad Company.

*Ward Hunt,* for the respondents.

I. For the general principles governing actions against a railroad corporation for negligence, whereby an injury is sustained, the following cases may be cited. (*Keegan* v. *The West. R. R. Co.,* 4 *Seld.* 175. *Holbrook* v. *Utica and Schenectady R. R. Co.,* 2 *Kern.* 236. *Hegeman* v. *West. R. R. Co.,* 3 *id.* 9. *Nolton* v. *West. R. R. Co.,* 15 *N. Y.* 444. 20 *id.* 248, 408, 422. 29 *Barb.* 234, 602. 28 *id.,* 41, 80.)

II. Mrs. Matteson, the wife, was properly admitted as a witness in the case. (*Code,* 1852. *Code,* 1857, § 399. *Code,* 1860, *amended, Sess. Laws* 1860, *ch.* 787. *Marsh* v. *Potter,* 30 *Barb.* 506. *Shoemaker* v. *McKee,* 19 *How. Pr.* 86.)

III. Mrs. Matteson's statement of symptoms to her physician, was competent. (1 *Greenl. on Ev.* § 102, *citing* 6 *East,* 188; 4 *McCord,* 38; 8 *Watts,* 355. *Phillips on Ev.* 232, 233, *citing Lord Ellenborough in* 6 *East,* 195 *to* 198. *Cowen & Hill's Notes,* 447, 587, *and cases cited. Caldwell* v. *Murphy,* 1 *Kern.* 416.)

IV. The questions put to the medical witness were proper, as questions of medical skill and science. (*Curtis* v. *R. and Sy. R. R. Co.,* 18 *N. Y.* 534, 542, 545. *The People* v. *Bodine,* 1 *Denio,* 281. *Goodrich* v. *The People,* 3 *Park. Cr.* 622. 1 *Cowen & Hill's Notes,* 759. 1 *Greenl. Ev. p.* 549, § 440.).

V. The charge that the jury should give damages for the pain and anguish, bodily and mental, suffered by Mrs. Matteson, and the pain that would be suffered thereafter by her, was correct. 1. The compensation should include mental anguish, as well as bodily suffering. (*Ransom* v. *N. Y. and Erie R. R.,* 15 *N. Y.* 416 *to* 420. *Morse* v. *A. and S. R. R. Co.,* 10 *Barb.* 621. *Curtis* v. *Roch. and Sy. R. R.* 20 *id.* 282. 18 *N. Y.* 534, 542, 545. *Cowden* v. *Wright,* 24 *Wend.* 429. 15 *Conn.* 225. 1 *Cush.* 451. 22 *Conn.* 290 *to* 298. *Blake* v. *Midland R. Co.,* 10 *Eng. Law and Eq.* 437. *S. C.,* 18 *A. and E., N. S.,* 93. *Theobald* v. *Railway Assurance Co.,* 26 *Eng. Law and Eq.* 432.) On

Matteson v. New York Central Railroad Company.

principle, also, the charge is correct. The mental pain is greater than bodily pain. To a greater extent it destroys both the power of enjoyment and the capacity of labor. It is suffered by the same party. It is caused by the same punishable neglect. It is tangible and appreciable in an equal degree with bodily pain. 2. That future, as well as past or present pain, should be considered by the jury. (*a.*) As to bodily pain this is the rule. (*See Curtis* v. *R. and S. R. R. Co.*, 18 *N. Y.* 534. *Ransom* v. *Erie R. R.* 15 *id.* 415. (*b.*) Conceding that mental pain is a proper subject of consideration by the jury, the rule must necessarily include that which is to occur hereafter. 3. In such cases, the future results of the injury, and the future condition of the party, are to be determined by the jury from the testimony given. (18 *N. Y.* 534, *supra.*)

VI. No objection arises from the judge's refusal to charge, as requested, " that if Mrs. Matteson's condition was produced by fright and excitement caused by the accident, and not by violence, the plaintiffs were not entitled to recover." 1. The defendant was not entitled to a charge upon an abstract proposition, but simply upon the law as applicable to existing facts in the case. There must be facts on which to base the request. (*Shorter* v. *The People*, 2 *Comst.* 193. *Doughty* v. *Hope*, 1 *id.* 79. *Zabriskie* v. *Smith*, 3 *Kern.* 322.) 2. There were no facts, nor pretense of facts, upon which this request was made. 3. The principle assumed in the request is not sound. The injuries to Mrs. Matteson, it will be observed, were real and substantial—not imaginary merely. They were produced by an actual, and not an imaginary cause. The request concedes that an accident occurred to the cars; in other words, they were thrown from the track; that such accident was the result of negligence on the part of the defendant; that by such accident and by such negligence the "present condition" of the plaintiff, viz., paralysis, and utter and permanent destruction of her health, was

produced. Upon principle and upon authority, these facts give a ground of action. (*a.*) For every wrong or breach of duty an action will lie, in some form, for the party damaged thereby. (10 *Pick.* 383. 8 *id.* 383. 16 *Mass.* 450.) (*b.*) The rule is general, that whenever the negligence of the defendant causes an injury to the person or property of the plaintiff, whether immediate or consequential, the defendant is responsible. (14 *John.* 432. 19 *id.* 381. 6 *Cowen*, 342. 1 *Sandf.* 89. 4 *Denio*, 464. 6 *Hill*, 522.) (*c.*) Nor is it necessary that there should have been an actual contact, or physical collision, to justify the action. (*Moshier* v. *U. and S. R. R. Co.*, 8 *Barb.* 427. *Cole* v. *Fischer*, 11 *Mass.* 137. *Loubz* v. *Hafner*, 1 *Devereux*, 185. *Vandenburgh* v. *Truax*, 4 *Denio*, 464. *Scott* v. *Shepherd*, 2 *W. Black.* 892.) (*d.*) The principle of these cases is sound. It is that the offending party is liable for the physical injuries resulting from his own illegal conduct, whether such injuries are produced by terror and alarm, or by physical contact.

*By the Court,* MULLIN, J. If section 399 of the Code, as amended in 1860, does not make husband and wife competent witnesses, the one for or against the other, the legislature has failed to accomplish what it designed. That it was the intention of the legislature to sweep away this only remaining guard which the court has thrown around the domestic fireside—the guard which made it safe for the husband to intrust to his wife his most secret thoughts and actions, with the assurance that her lips were forever sealed, and that no power on earth could ever unseal them to his prejudice—that it was the intention to sweep this safeguard away—I have no doubt. The husband and the wife are, for all legal purposes, no longer one person, with common interests, common sympathies and a common destiny, but they are two persons, with separate interests, separate destinies, and without any feel-

Matteson *v.* New York Central Railroad Company.

ings in common, except such as may exist between members of a partnership.

Whether the gratification of the clamor for reform—whether the correction of the few and trifling abuses which the former law tolerated or produced—is a compensation for the destruction of domestic peace, by creating diverse interests in every family in the State, by sowing suspicion and distrust where there should be confidence and trust—remains to be seen. The whole system is, in my judgment, not only unwise but vicious—the most fatal stab at the peace and good order of the State that was ever inflicted.

That is a strange law for the protection of married women which leaves them entirely at the mercy of the violence or allurements of the husband, which gives the latter absolute control over their property, thus enabling the husband to waste and squander the whole, when the abuse the law was designed to correct was the power of the husband to take and dispose of his wife's earnings, while her separate estate was or might be beyond his reach.

That law confers lasting blessings and benefits on the community that makes it unsafe for the husband to disclose to his wife that he has made a contract with a neighbor, or done him a wrong, lest his wife be made a witness, and his confession used against him.

But, whatever our estimate may be of the law, we must give it effect, and I am not disposed to divert one drop of blessing or benefit from the people of the State which the legislature can confer. I therefore held at the circuit, as I now hold, that the law of last winter was designed to make the husband and wife witnesses in all cases where they were parties to the suit.

It is argued that the judge erred in permitting to be given in evidence, the declaration of the agent of the company in charge of the gang of hands employed in relaying

the ties, that there was sufficient time to relay them before the arrival of the train.

· The general rule is, that the declarations of an agent, made in reference to the subject matter of the agency, while engaged in the business, bind the principal. (*Story on Agency*, 136.)

In *Price* v. *Powell*, (3 *N. Y.* 322,) the declaration of the master of a vessel was used against the owners, as to the manner damage occurred to property shipped by the plaintiff. In *McCotter* v. *Hooker*, (4 *Seld.* 497,) the declarations of the defendant's agent were received, which were made to the plaintiff's agent, in relation to the detention of and injury to goods which had been shipped by the defendants, as carriers, but not delivered at their place of destination, but detained through the winter and returned, damaged, to the defendants in New York, when and where the agent's declaration was made. See also *McCormick* v. *Barnum*, (10 *Wend.* 104;) *Barclay* v. *Howell's Lessees*, (6 *Peters*, 498.)

Time entered into and formed a material element in the proceedings at the time of relaying the ties. Childs was the person in charge; it was his duty to see, before removing the old ties, that there was ample time to complete the work before the time for the arrival of the train. He examined his watch and said there was time enough. It was a declaration made while performing the act of relaying the ties, in reference to it, and thus a part of the *res gestæ*, and competent. Had the declaration been that there was not time, and yet Childs had persisted in the work, can there be a doubt that it would be competent? I think the evidence was properly received.

The defendant's counsel insists that Mrs. Matteson's statements in regard to her health and condition, should not have been received. The counsel, I think, must have overlooked the fact that the statements complained of were made to a physician called to prescribe for her after the

accident in question. The evidence was received to show the symptoms for which he prescribed, and the disease, if any, under which she was then laboring. If this evidence is not competent, then the evidence of physicians and surgeons as to treatment, which rests on the declarations of the injured party, must be excluded, and the protection which such evidence gives against fraud and deception would be entirely lost. The jury had the right to know for what disease or symptoms of disease and injury the physician prescribed, and for the evidence of which he relied necessarily on the patient's statements.

The objection seems to proceed on the idea that the declarations were received for the purpose of satisfying the jury that the condition of Mrs. Matteson was the result of the accident. That was not my view of the object of the evidence. It was to show that the opinion of the physician was founded on her statement of her condition at the time, and thereby to learn whether the symptoms were such as would result from the injuries complained of, or whether they arose from some other cause, and whether or not the effects were or were not temporary in their nature. But if the object and effect of the evidence was to satisfy the jury as to her condition at the time the physician was called, it was competent to give her declarations for that purpose. (1 *Greenl. Ev.* § 102. *Caldwell* v. *Murphy,* 11 *N. Y.* 416.)

It is also objected that it was incompetent to prove by Dr. Budlong, at what period after the injury the plaintiff would be most likely to begin to improve, if she was going to improve at all. It was competent for the plaintiff to show that the injuries were permanent—that she would not probably recover from the effects. The doctor had given her symptoms, and the cause which, in his opinion, had produced them. The brain and nervous system were severely involved. She had, for the six months before the trial, been growing worse. The ques-

Matteson *v.* New York Central Railroad Company.

tion then was, is she to get well. He thought not. Why not? Because, in his judgment, the disease was of that description which, if it were to be removed, would have begun to improve within the year, and with the change of season. This was in support and in confirmation of his opinion that she would not get well, and if opinion is competent, it is just as competent as to when the improvement would be manifested, as that it never would occur. It was not speculation, it was his opinion, founded on his skill and experience, that was called for, and that he gave. I have no doubt of its competency.

Dr. Preston was asked what was his opinion as to the cause of the spinal difficulty he had testified Mrs. Matteson was afflicted with. This evidence was objected to as incompetent. And it is said that the rule is, that the physician was competent to state what might or would cause the difficulty he discovered, but not to give an opinion as to what did cause it in this particular case.

The rule of evidence is thus stated by Justice Sutherland, in *The Jefferson Ins. Co.* v. *Cotheal,* (7 *Wend.* 78.) A physician, in many cases, cannot explain to a jury the cause of the death or other serious injury to an individual, so as to make the jury distinctly perceive the connection between the cause and the effect. He may, therefore, express an opinion that the wound given, or the poison administered, produced the death of the deceased, but in such a case the physician must state the facts on which his opinion is founded. (1 *Cowen & Hill's Notes,* 761 to 763.)

The court charged the jury that it was a question of fact to be decided by them, whether the defendant was in duty bound to furnish its agents accurate time-pieces, and not having done so, whether it was not guilty of such negligence as rendered it liable. This is objected to as errroneous. It is not denied but that all questions of negligence properly belonged to the jury, and it was the

duty of the court to submit all such questions to them. And it was the province of the jury to say what acts or omissions of the company constituted negligence. The repairs of the track were attempted to be made without interfering with the passing of the trains. The time of the passage of the trains was properly understood. And it only remained, to insure safety, that the men should have an accurate time-piece, so as to enable them to so conduct the work that the track should be in order on the arrival of the train. A time-piece, then, was absolutely indispensible, and it was just as indispensible that it should be accurate. An inaccurate one was worse than useless; it was calculated to mislead—to prevent that great care and caution which men without a watch would be very likely to exercise. Whose duty was it to see that the men employed in such labor as were those at the place where the accident in question occurred, were furnished with a proper time-piece? Most surely the defendant's. Was it done? No. The evidence shows that the company's officers paid no attention to this subject, but left the foreman to obtain and attend to the regulation of their own watches. On this evidence the jury had the right to pass, and say whether it was or was not negligence in the defendant thus to conduct itself. But it is said that the evidence showed that Childs' watch was reliable—had been in use several years and had not been found out of order before. This evidence the jury had before them in connection with that above referred to, and it was for them to say, 1st. Whether they believed Childs' evidence on that or any other subject; and, 2d. Whether, if they did believe it, the defendant was not still guilty of neglect in omitting to give attention to so important a duty—one on which the safety of the lives of hundreds of human beings depended, daily.

I am unable to discover wherein the charge in this respect was erroneous.

That portion of the charge wherein the judge instructed the jury to give damages for mental pain and anguish, past and prospective, is excepted to as erroneous. The ground of the counsel's objection is, that inasmuch as Mrs. Matteson received no serious wound or bruise which would cause mental anguish as the result of physical suffering, she is not entitled to recover for it, any more than other persons on the same train could recover who were not physically injured. The counsel assumes, in palpable opposition to the proof, that Mrs. Matteson did not suffer any wound or bruise which would cause mental anguish from acute physical suffering. Her limbs were partially paralyzed so that she could not use them. Her brain was affected so as to impair her mind. This was some evidence of physical suffering. Whether mental anguish can only result from acute suffering I do not know. The question for the jury is, whether there was mental anguish resulting from her injuries, or not; and if there was, she was entitled to be compensated for it.

The question then is, was Mrs. Matteson entitled to compensation for mental anguish, past and prospective? It was distinctly held in *Ransom* v. *N. Y. and Erie R. R. Co.*, (15 *N. Y.* 415,) that mental suffering is a legitimate element of damages in an action for injuries like this. And in *Curtis* v. *The Rochester and Syracuse R. R. Co.*, (18 *N. Y.* 534,) it was held that the right of recovery is not limited to past bodily pain and suffering, but the party is entitled to compensation for such future suffering as the evidence renders it reasonably certain must necessarily result from the injury.

It is said that the charge permitted the jury to give damages for such speculative injuries, pain and suffering as might thereafter be endured by Mrs. Matteson. In this, I think, the counsel is mistaken. No such thing was said or intended in the charge to the jury. I have shown that by express adjudications of the Court of Appeals

Mrs. Matteson was entitled to damages for past pain and suffering, and also for that which she might endure necessarily resulting from the injury. The jury was instructed to give such damages as would compensate Mrs. Matteson for the bodily injury and mental anguish sustained, whether the injury has yet been developed or its effects shall hereafter appear, and are to judge of its future results by the testimony given.

While the phraseology of the last clause is not as happy as might have been used, to express the idea, yet it is sufficient to apprise the jury that they are to ascertain from the evidence whether injuries will be hereafter developed and mental pain and suffering endured. That conclusion is not speculative which is legitimately drawn from legal and competent evidence. The charge precludes the right of the jury to speculate, and requires them to be guided by the testimony in the case.

If the charge was substantially right, it was the duty of the counsel to call on the court to enlarge or modify it, so as to present the whole case fully and fairly to the jury.

I think the merits were fairly presented to the jury, and the judgment ought to be affirmed.

Judgment affirmed.

[OSWEGO GENERAL TERM, July 8, 1862. *Mullin, Morgan* and *Peckham,* Justices.]