By the Court,
Monell, J.
The two principal questions in this case are—first, whether the defendants contracted to forward the goods by the Ocean Bird ; and, second, whether the amount of the judgment is correct. Independently of the written receipt, whereby the defendants agreed to forward by the Ocean Bird, there was evidence that the defendants agreed by parol, through Stuart, whom it was conceived had authority for the purpose," to forward the goods by that vessel. The referee has found generally, that the defendants agreed to so forward them, and we cannot say whether he relied upon the parol contract, or has found the fact, upon the evidence that *84 Tillinghast had authority to bind his principals by the written contract. But.assuming, as was claimed on. the argument, and as the referee seems to have intimated in his opinion attached to the case, that the'contract was made out, if it all, hy the written receipt only, yet the evidence of Tillinghast’s authority to make the contract, and to bind the defendants, was conflicting, and the finding of the referee on that subject cannot be disturbed by this court. It is conclusive. (Woodruff v. McGrath, 82 N. Y. Rep. 255.)
The defendants proved by Stuart, that he alone was authorized to insert the name of any particular steamer in a receipt for goods to be forwarded, and that Tillinghast had no authority to sign the receipt given to the plaintiffs in this case. Evidence was also given tending to show that Olcott (the plaintiffs’ shipping agent) had frequent dealings with the defendants, and was familiar with their mode of doing business ; shipped goods by them as often as once or twice a week ; and several receipts for goods shipped by Olcott, signed by Stuart, were proved. Some of these receipts differed in form, from the one signed by Tillinghast, and were proved to be in the form usually given by the defendants.
On the part of the plaintiffs, it was proved that Tillinghast had been a clerk of the defendants ten or twelve years. That he sometimes signed receipts for property left to be carried ; that he was authorized to receipt for goods going east by way of Stonington, and south by way of Savannah ; that he also signed receipts for forwarding freight, where there was no special agreement as to the manner of forwarding; that he sometimes performed other duties as he was called upon, from time to time, giving ordinary receipts in the ordinary business of the defendants. Winchester, a clerk of the defendants, testified, on his cross-examination, that his duties were the same as those of Tillinghast, and that he sometimes, at the request of parties, inserted the name of a particular steamer. He also testified that, .in Stuart’s absence, others performed his duties, and that in the absence of the clerk who was there for a particular purpose, Tillinghast, or any other clerk, per *85 formed, the duty of the absent clerk. It was proved by Cook, a witness for the plaintiffs, that on occasions, Stuart being-busy, he (Cook) had been sent to Tillinghast to have receipts signed.
Without referring to any other evidence in the case, it is plain that upon the question of Tillinghast’s authority, the proof was very conflicting, and we cannot, therefore, disturb the referee’s conclusion upon it. Certainly, his finding is* not against, nor can we say it is not sufficiently supported by, the evidence.
From the general nature of the defendants’ business, requiring a large amount of clerical assistance, the duties assigned to any particular clerk must have been sometimes performed by others; and any act done under such circumstances, if within the general scope of. duty, would be the act of the principal.
The plaintiffs in this case were entitled to rely upon the authority of Tillinghast to make the contract, from the general course of conducting the defendants’ business, and from which it was fair to infer that an authority to contract to forward, included an authority to contract to forward in a particular way.
The defendants, in this action, were forwarders, and not carriers, of the goods in question. They undertook, for a compensation, to forward the goods by a carrier, other than themselves ; and they only assumed a liability attaching to warehousemen.
But they are liable in addition, for a breach of their contract.
. They engaged to forward, by a particular steamer, and having failed to do so, they are liable for any loss sustained by reason of such neglect. (Angell on Carriers, §§ 162, 176, 178, 213. Hand v. Baynes, 4 Whar. 204.)
The evidence of the value of the property lost was, I think, sufficient. As to case No. 703, Cook testified to a list of articles contained therein, and their values; and Magnin & Gruedin both testified to the value of the two card cases belonging to them. As to case 704, the books of Hyde & Goodrich *86 were produced containing the invoice, and Cook testified that he made the entries from the original bills of purchase. This witness did not state that he saw the goods go into case 704; but Curry, who packed the box at Providence, and Thurber, who knew the contents, testified to the contents. Graham testified to the contents and value of case 200.
There was, at least, some evidence of the contents and value of all the' cases ; and although perhaps somewhat weak, it seems to have satisfied the referee, and we cannot say it was not sufficient.
The value of the goods of Magnin & Guedin was properly included in the judgment. They were taken on consignment, to be sold on commission. • The forwarding contract made with the plaintiffs included those goods, and the defendants’ liability for a breach of the contract was to the plaintiffs, and not to their consignors. (Considerant v. Brisbane, 2 Bosw. 471. Price v. Powell, 3 N. Y. Rep. 322.)
Some exceptions were taken to the admission and rejection of evidence which will be briefly noticed. The motion to strike out part of the evidence of Olcott was made several months after his examination in chief had been closed. Eo objection appeared to have been made at the time he was testifying, and it was a matter entirely in the discretion of the referee whether he would afterwards allow the motion. But, besides, the evidence was proper, as it was merely the instructions of Olcott to his clerk to have the goods shipped in a particular manner.
The conversation between Guedin and Goodrich was not improper. It went to establish the fact, that they intended and desired that the goods should not go by the Crescent City, and bore somewhat upon the contract to ship by the Ocean Bird. At any rate, it could not have had any influence on the mind of the referee, and the exception, for that reason, is immaterial.
The exclusion of the evidence offered to show that Stuart stated to Conger that the boxes had been sent by the Crescent City, and Conger’s reply thereto, was not erroneous. It was after the contract to ship by the Ocean Bird had been made, *87 after the defendants had violated their contract, by sending by another vessel. Conger had no authority to bind his principals by any admissions whatever, more especially after the liability of the defendants had attached.
The receipt of the insurance money upon the open policy did not operate as a recognition of any change made by the forwarders in shipping by the Crescent City. The voyage to New Orleans was within the risk of the policy, and it appears the insurers, without controversy, paid the loss. The amount received was allowed by the referee, and deducted from the plaintiffs’ damages.
Upon the whole, I do not find any error in the trial, or in the conclusions of the referee.
The judgment should, therefore, be affirmed.