engraving was printed, upon the ground that the picture was that of a public man, and that Mr. Corliss had consented in his lifetime to the publication of his picture in various books and newspapers, but that, the plates having been obtained upon a condition which had not been complied with, the defendant was not entitled to use them. A motion having been made to dissolve the injunction, the court, upon new facts, dissolved it, the opinion being written by Judge Colt, who, however, took occasion to say that he believed the law to be that a private individual had the right to be protected in the representation of his portrait in any form; that it is a property, as well as a personal, right; and that it belongs to the same class of rights which forbids the reproduction of a private manuscript or painting, or the publication of private letters, or of oral lectures delivered by a teacher to his class, or the revelation of the contents of a merchant's books by a clerk. It was held by Judge Colt that the distinction in the case of a picture or photograph lies between public and private characters. A private individual should be protected against the publication of any portrait of himself, but where an individual becomes a public character the case is different. I see no difficulty in the application of this rule, and it seems to me that it is one eminently proper to be observed. In the case of Chapman v. Telegraph Co., 88 Ga. 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. Rep. 183, the sole question was the measure of damages for the breach of a contract in neglecting to send a message, and does not bear upon the case at bar. I have examined this case with great care, and, while the right claimed by the plaintiff is new, yet I think that the principle upon which that right depends is not novel, or one in respect of which there can be any doubt, but that, upon the application of well-established principles, the plaintiff has stated facts sufficient to constitute a cause of action.

The judgment appealed from should be affirmed, with costs, with leave to the defendants to withdraw their demurrer and answer upon payment of the costs in the court below and in this court. All concur.

---

(63 App. Div. 586.)

TAYLOR v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. RAILROADS—INJURY TO PASSENGERS—NEGLIGENCE—QUESTION FOR JURY.
Where plaintiff was injured while alighting from a train, it was not error to refuse to instruct that, if he knew the train had started before he attempted to get off, he was guilty of contributory negligence, as the question was for the jury.

2. APPEAL—OBJECTION TO EVIDENCE.
An objection to evidence as "incompetent" presents to the appellate court every ground of incompetency, and permits the appellant to raise the objection that it was not part of the res gestæ.

3. EVIDENCE—RES GESTÆ.
Plaintiff alleged that his injuries were occasioned by the sudden starting of a train before he had time to alight. Before arriving at the station, a friend accompanying the plaintiff had an altercation with the

conductor, and witness, who was in the car, afterwards went into another car, and conversed with the conductor, who asked him if he intended getting off at the next station, and then said: "You want to be ready to get off. I will get even with those fellows." *Held*, that such remarks were not admissible as part of the res gestæ.

Adams, P. J., and Spring, J., dissenting.

Appeal from trial term, Wayne county.

Action by George Z. Taylor against the New York Central & Hudson River Railroad Company. From a judgment in plaintiff's favor, and from an order denying a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Edward Harris, for appellant.
Albert A. Wray, for respondent.

RUMSEY, J. The action was brought to recover for damages suffered by the plaintiff because of the negligence of the defendant's servants. On the 21st of September, 1899, the plaintiff was a passenger upon the defendant's railroad in a train going from Rochester to Clyde, in the county of Wayne. While he was leaving the train at Clyde station, it was suddenly started without any notice to him, and he was thrown to the ground, and seriously injured; and for the injuries sustained he brings this suit.

No question of fact is presented upon the appeal, and but two exceptions are relied upon by the appellant's counsel. The first arises upon a refusal of a request to charge. The evidence of the plaintiff tended to show that the train was at rest when he attempted to get off the car; that, when he was upon the second or third step from the car platform, there was a sudden jerk of the train, and he was thrown down and injured. There was evidence on the part of the defendant tending to show that the train, having stopped at the station, had started again, and was actually in motion, before the plaintiff left his seat in the car, and was actually moving when he attempted to alight. In view of that evidence, the defendant's counsel requested the court to charge that, if the plaintiff knew that the train had started, and was in motion, before he attempted to get off, then he was guilty of contributory negligence, and could not recover. To the refusal of the court to make this charge the defendant excepted. We think that the exception was not well taken. There may be circumstances under which it might be contributory negligence, as a matter of law, for a passenger to attempt to alight from a moving train; but that cannot always be the case. If the train has just started, and is moving slowly, a prudent man would not hesitate to get off; and, except where the train is moving rapidly, or where the situation of the train or the condition of the man is unusual, the question whether it is contributory negligence to attempt to alight from a moving train must be left to the jury. Such is the rule to be adduced from the case of Distler v. Railroad Co., 151 N. Y. 424, 45 N. E. 937, 35 L. R. A. 762, and within that rule the question of the plaintiff's contributory neg-

ligence in this case was clearly one for the jury. That being so, it was not error for the court to refuse to charge that, if the plaintiff attempted to alight from a moving train, he could not recover.

A more serious question arises, however, upon the exception taken to the admission of the testimony of the witness Emery. The train upon which the plaintiff was traveling was an accommodation train. At Newark—two stations before Clyde—a man named Noon had got upon the train. He sat with the plaintiff and the witness Emery in the smoking car. When asked for his fare, there arose some dispute between himself and the conductor as to the proper amount to be paid, which might possibly have resulted in a little ill feeling on the part of the conductor towards Noon. After passing Lyons, the station before Clyde, Emery went into the rear car of the train, and there had a conversation with the conductor. He was asked what that conversation was, to which an objection was taken that it was incompetent, inadmissible, and that anything the conductor said to Emery in the car next to the smoking car was not competent. The objection was overruled, and the witness testified that the conductor asked him whether he was going to get off at Clyde, and then said to him: "You want to be ready to get off. I will get even with those fellows." We are inclined to think that the exception to this evidence was well taken. While it must be conceded that the general rule is that the declarations of an agent against his principal are only competent when they are made while the agent is actually engaged in the business of the principal, and that the declarations in question do not come within this rule, yet it is claimed that they are competent here, because they constituted a part of the res gestæ. Whether they do or not is the serious question presented in this case. The plaintiff, however, insists that that ground of incompetency was not raised at the trial, and that, therefore, the defendant is not in a situation to urge it upon this appeal. In this he is clearly mistaken. The objection was taken that the evidence was incompetent, and that raised then, and presents here, every ground of incompetency which could not have been obviated at the trial had special attention been called to it. The fact that they were not a part of the res gestæ, if that be true, was a reason why they should be held to be incompetent; and, when one makes an objection to evidence which is based upon a right ground, the fact that he does not give every reason why his objection is well taken is of no importance, provided that the ground for the incompetency could not have been obviated. Clearly, in this case, the ground could not have been obviated, and therefore it was not necessary that the reason why the incompetency existed should have been more particularly stated,—if, indeed, we can assume that that was not done, which I think cannot be fairly assumed from the record.

In considering the question whether these declarations are competent, it must be borne in mind that the conductor is no party to the action. What he did is of no importance, except so far as it shows that the defendant, acting through him as its agent, failed in the performance of some duty which it owed the plaintiff, in consequence of which the injury was received. The liability of the defendant arose

only from the act of the conductor. That liability did not depend at all upon the motive with which the conductor did the act. The act was the premature starting of the train. If the train was prematurely started by the conductor, the liability of the defendant exists, whether that was done by mistake or with the purpose of injuring the plaintiff. In either case the defendant would be liable; and, in the absence of knowledge of the conductor's malicious purpose, the fact that he was actuated by such a motive would not increase the liability of the defendant in the slightest degree. Therefore it is quite clear that the only material matter with reference to the act of the conductor was whether or not he did it. His declarations are material only so far as they tend to show that fact. As to all other purposes they are absolutely immaterial. The claim of the plaintiff is that these declarations are material, because they accompanied the transaction which was the subject of the investigation; in other words, that they are competent because they constitue a part of the res gestæ. It is undoubtedly true that in some jurisdictions great latitude has been indulged in the reception of evidence of this class upon the ground that it constitutes a part of the res gestæ. Such cases are those of Insurance Co. v. Mosely, 8 Wall. 397, 19 L. Ed. 437, and Com. v. McPike, 3 Cush. 181, 1 Am. Dec. 727, but the principle of those cases has never been adopted in this state, and when declarations of an agent are offered in evidence as a part of the res gestæ their admissibility has been restricted within very narrow limits. Patterson v. Hochster, 38 App. Div. 399, 56 N. Y. Supp. 467. The rule as to the admission of such declarations in cases of this kind was laid down in the case of Luby v. Railroad Co., 17 N. Y. 131, to the effect that, to be admissible, such declarations must constitute the fact to be proved, and not the admission of some other fact, and must be made during the transaction depending at the very time. Page 133. That case and the rule laid down by it have been followed in the case of Waldele v. Railroad Co., 95 N. Y. 274, 47 Am. Rep. 41, and have never, so far as I can discover, been departed from. It has always been held that, to warrant the admission of declarations as part of the res gestæ, they must be the main or principal fact or transaction; and only such declarations are admissible as grow out of the principal transaction, illustrate its character, are contemporaneous with it, and derive some degree of credit from it. All the authorities assume that there must be a principal fact established by other evidence before declarations can become competent as a part of the res gestæ. Patterson v. Hochster, supra. That case illustrates clearly the object of the admission of such declarations, and the extent to which the rule will be applied. In that case the plaintiff sued to recover for damages occasioned by stepping into a coal hole, the cover of which was not securely fastened. As tending to show that it was not securely fastened, the plaintiff was permitted to introduce in evidence her own declarations, made at the time she fell into the hole, to the effect that the cover was not fastened. Those declarations were sought to be used as proof of the principal fact,—that is, that the cover of the coal hole had not been securely fastened; but the

court held that the admission of those declarations as proof of the principal fact, which had not otherwise been shown to exist, was error, and the judgment was reversed.

Referring to the case of Luby v. Railroad Co., supra, it is quite clear that the declarations of the conductor here were not admissible within the rules there laid down. The fact necessary to be proved was whether the train was prematurely started at the time that the plaintiff was about to step from the car. The act which was the subject of the investigation was that done by the conductor by way of starting the train at that very moment. There can be no doubt that if, just at that moment, the conductor, putting his hand on the signal cord, had stated that he was about to start the train, such declarations would have been competent as illustrative of the act which he was just about to perform. But those declarations would have been admissible as part of the res gestæ, because they were actually contemporaneous with the act under investigation, and illustrated the object with which it was done; the object being to accomplish the act which created the liability of the defendant. The case of People v. Davis, 56 N. Y. 95, is relied upon as sustaining the ruling of the trial court. But in that case the declarations were held not to be competent as part of the res gestæ, and it is quite clear to my mind that the rule laid down by Judge Grover was not broad enough to permit the admission of these declarations of the conductor. The case of Railroad Co. v. Greenthall, 23 C. C. A. 100, 77 Fed. 150, is also relied upon. But in that case the question was whether the defendant, whose duty it was to use reasonable care to protect its passengers, was liable for the killing of one passenger by another, who was insane. It is quite clear that it was material to show that the employés of the defendant in charge of the train had knowledge of the insanity of the murderer before the act was done, and for that purpose what was said by the conductor shortly before upon that point was clearly material, not as constituting a part of the res gestæ, but as showing the actual fact that he had received notice of the condition of affairs. As was said before, it is not difficult to find many cases in other jurisdictions where this evidence would be held competent, but I have not been able to find any case in the state of New York in which evidence of this kind is competent upon the theory that it is part of the res gestæ. But the declarations in question were clearly no part of the act of the conductor which subjected the defendant to liability. The act took place after the train had stopped at Clyde, and just before it started. Just how long before then the declarations had been made does not appear, but it is clear that they were made some time before the train reached Clyde while on its way towards it, at a time when the possibility of doing the act had not arisen, and the conditions which authorized the conductor to act had not yet come into existence. They clearly do not come within the rule laid down in Luby v. Railroad Co., supra, to the effect that declarations, to be competent, must constitute the fact to be proved, and must be made during the transaction depending at the very time. They were not a part of the res gestæ, therefore, so as to be competent within the rule laid down in Patterson v. Hochster, supra.

No one will claim that the declarations made before the train reached Clyde constituted a part of the transaction occurring when the train was about to leave that station.   The declarations which are competent and admissible are declarations made while the thing is occurring, so that the person who hears them, and who is at the same time aware of the act which is done, may be able to say what act it was that the declarations qualified; and it is only because the declarations do qualify the act which is done at the same time they are made that they become material.   As is said by Judge Cullen, such a declaration derives credit and importance as forming part of the transaction itself.   They must be the main or principal fact or transaction, and only such declarations are admissible as grow out of the principal transaction, illustrate its character, or are contemporaneous with it.   Patterson v. Hochster, supra.   It is quite clear in my mind that the declarations in question can in no way be said to come within the requirements which are necessary to exist within the rules laid down in this state before the declarations of an agent can be received, and for this reason the ruling of the court below was error.   The question whether the train was prematurely started was severly litigated.   These declarations, having been received, might have been and must have been considered by the jury as material upon that point; and because they were erroneously received it follows that the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the result of the action.

McLENNAN and WILLIAMS, JJ., concur.

ADAMS, P. J. (dissenting).   On the evening of September 21, 1899, the plaintiff was a passenger upon one of the defendant's trains, and while attempting to leave the same at the station in the village of Clyde he was thrown violently upon the station platform, in consequence of which he sustained serious personal injuries, including a fractured arm.   The evidence upon the part of the plaintiff tended to show that while the plaintiff was about to alight from the lower step of the car the train started with a sudden jerk, which caused him to plunge "headforemost onto the platform"; while, upon the other hand, it was claimed, and there was some evidence which supported the contention, that he deliberately swung himself from the train while it was in motion.   There is but a single question in the case of sufficient gravity to require serious consideration from this court, and that arises out of the admission, over the defendant's objection and exception, of certain declarations made by the conductor of the train to the witness Emery.   The undisputed facts of the case are that the plaintiff took passage upon the defendant's train at Rochester, intending to leave the same at Clyde, which was the village of his residence.   At Newark station he was joined by an acquaintance named Timothy J. Noon, and the two occupied seats in the smoking car, as did also the witness Emery.   When the conductor came into this car, an altercation arose between him and Noon respecting the latter's fare.   It seems that Noon tendered his

fare in money at the rate of two cents per mile; that the conductor demanded five cents additional, which Noon refused to pay; that the conductor thereupon threatened to put Noon off from the train at Lyons, which was the next station east of Newark; and that in the course of the controversy which ensued considerable acrimony and excitement were displayed, whereupon Emery, in order to avoid further trouble, paid the five cents himself, and shortly thereafter went into the coach behind the smoking car. Lyons is about six or seven miles west of Clyde, and while the train was between these two stations the conductor had a conversation with Emery, in the course of which, after referring to the disturbance which had just taken place, he asked him if he was intending to get off at Clyde, and, upon being informed by Emery that he was, said to him: "You want to be ready to get off. I will get even with those fellows." This evidence was objected to "as incompetent and inadmissible, and not in the same car where the plaintiff was; that anything the conductor said to Mr. Emery in the car next to the smoker is not competent." At the time the evidence was offered and admitted it had been proven that the train stopped but an instant at the Clyde station, and then started up with a sudden jerk. There was also evidence from which the jury might have inferred that it was caused thus to start by a signal given by the conductor. In these circumstances, the trial court received the evidence, not as proof of willful misconduct upon the part of the conductor in starting the train suddenly, but simply as corroborative of the plaintiff's evidence that the train did not remain at the Clyde station long enough to afford him a reasonable opportunity to alight. The single proposition, therefore, with which we are concerned, is, was such evidence relevant to that issue, and admissible for the purpose for which it was received? The answer to this proposition probably depends upon whether or not the conversation between the conductor and Emery can be regarded as part of the res gestæ. One of the greatest difficulties encountered by the courts in their efforts to apply the law of evidence is to determine when declarations may be received as part of the res gestæ, and this difficulty has led to frequent attempts to formulate and simplify a rule which shall be general in its application. The result of these efforts has not been always satisfactory, but for the purpose of this review it may be said that, in order to render such declarations admissible, there must be a principal fact or transaction, and that only such declarations are admissible as grow out of that transaction, illustrate its character, are contemporary with it, and derive some degree of credit from it. Lund v. Inhabitants of Tyngsborough, 9 Cush. 36; 11 Am. & Eng. Enc. Law, 523. The main transaction in this case was, of course, the starting of the train at the Clyde station; for, in one aspect of the case, the plaintiff's right of action depends entirely upon whether the train was started suddenly, and before a reasonable opportunity had been afforded him to alight therefrom. The declarations of the defendant's conductor, while not growing out of that transaction, in the sense that they followed it, were nevertheless part and parcel of it, because they related to it,

and indicated and illustrated its character; that is, the conductor said, in substance, to Emery, a passenger, "This train will stop but an instant at Clyde, and, consequently, if you intend getting off at that station, you had better do so as expeditiously as possible." They were likewise, in my opinion, contemporaneous with it; for they were made by the conductor while in the discharge of a duty owing by him to the passengers upon this train, and imposed upon him by the relation which he bore to the defendant. He knew that the train was, by his direction, to make an unusually short stop at the station where Emery was intending to leave it, and for that reason notified him of the fact. This notification was given after the altercation between the conductor and Noon had occurred, and while the train was between Lyons and Clyde. It must consequently have been given while the train was not more than six miles from the latter station, and within ten or twelve minutes, at most, of the time when the principal transaction occurred; and, inasmuch as the evidence tends to show that the transaction was in accord with the conductor's declarations, it may properly be said, I think, that the latter derived some degree of credit from it.

In view of all these circumstances, I do not well see how the evidence of the witness Emery could have been properly excluded, and many cases can be cited from the reports of this and other states which will support the ruling of the trial court upon principles somewhat analogous to those above mentioned. Thus, in Matteson v. Railroad Co., 62 Barb. 364, it was held that the declarations of an agent of the defendant, who was in charge of a gang of men engaged in relaying ties, that there was sufficient time to relay them before the arrival of the next train, were admissible against the company, the same being a part of the res gestæ. In Price v. Powell, 3 N. Y. 322, which was an action against a carrier for damages sustained in consequence of the breakage of some marble "tomb tops," it was declared that a conversation between the master of the vessel upon which the marble was shipped and the consignee, before the marble had been delivered to the consignee, was competent evidence for the plaintiff. In a Massachusetts case evidence that men working at a gangway were warned shortly before the accident occurred that the plank was unsafe was held admissible in an action for injuries to a person caused by the fall of the gangway. Parker v. Steamboat Co., 109 Mass. 449. In Railroad Co. v. Jackson, 81 Ind. 19, which was an action by a passenger to recover damages which he sustained in consequence of a drenching which he received while upon the defendant's train, and in which evidence was given tending to show that the water was cast upon the passenger by the direct procurement of a brakeman of the train, it was held competent to prove a previous declaration of the brakeman of his purpose to do it. And in the federal court of appeals (Eighth circuit) it was held that a conversation between a conductor of a train and a passenger, who expressed fear of a fellow passenger, as to the latter's sanity, is admissible as part of the res gestæ in an action against the railroad company for the killing, shortly after such conversation, of another

passenger by the person whose sanity was questioned; and such holding was placed upon the ground that, when making the declarations, the conductor was, as in the present instance, acting strictly within the line of his duty. Railway Co. v. Greenthal, 23 C. C. A. 100, 77 Fed. 150. But, without multiplying authorities, it is sufficient to say that, in my opinion, this case falls directly within the principle enunciated by Grover, J., in People v. Davis, 56 N. Y. 95, who thus expressed himself:

"Anything said accompanying the performance of an act, explanatory thereof, or showing its purpose or intention, when material, is competent as a part of the act. * * * The length of time between the act and its subsequent narration by one of the actors I do not regard as material. The question is, did the proposed declaration accompany the act, or was it so connected therewith as to constitute a part of it? If so, it is a part of the res gestæ, and competent."

Clearly, in the present instance the conductor's declarations indicated and explained the purpose and intent of the principal act which occurred but a few moments later. They were so connected with that act as to constitute a part of it, and consequently, within the rule above stated, they were part of the res gestæ, and admissible. Another class of cases is often cited in support of a different doctrine, and of this class Luby v. Railroad Co., 17 N. Y. 131, and Waldele v. Railroad Co., 95 N. Y. 274, 47 Am. Rep. 41, are, perhaps, fair types. But it is to be observed that the declarations in such cases were generally offered merely as proof of some past transaction, and not infrequently—as in the Luby Case—they were declarations which had been made by an employé who was endeavoring thereby to account for what he had done with a manifest purpose of exonerating himself, and casting the blame upon his principals, which it is needless to suggest is quite a different matter from declarations made while in the discharge of a duty, and in anticipation of an event which the employé knew was about to occur. After a careful examination of the question under review as it is presented by the facts of this case, I am convinced that the evidence of the conductor's declarations was admissible for the purpose for which it was received, and consequently I am constrained to dissent from the opinion of Mr. Justice RUMSEY.

SPRING, J., concurs.