## THE HADJI.

*(Circuit Court, S. D. New York. July 1, 1884.)*

1. COMMON CARRIERS—BILL OF LADING—NEGLIGENCE—RELEASE OF RESPONSIBILITY AGAINST INSURABLE DAMAGE.

If a condition in a bill of lading, relieving the carrier from liability for "any damage that can be insured against," is to receive an unqualified construction, and be deemed to include a loss arising from the negligence of the carrier, it is obnoxious to public policy, and therefore void.

2. SAME—PUBLIC POLICY.

Public policy demands that the right of the shipper to absolute security against the negligence of the carrier, and of all persons engaged in performing his duty, shall not be taken away by any arrangement or agreement between the parties to the service.

3. SAME—IMPLIED RELEASE.

The same reasons that forbid the recognition of an express contract between the carrier and the shipper, exempting the former from liability for his own negligence, forbid a contract between them which is designed to work the same result. That which cannot be done directly, will not be permitted to be done indirectly.

4. SAME—THE OBJECTION DEFINED.

The objection to a condition releasing the carrier from liability for an insurable damage lies in its tendency to impose upon the shipper the burden of protecting himself against a risk which it is the carrier's duty to assume, and which the law will not permit him to evade. It is better that the carrier

should be paid a higher freight, consequent upon his insuring himself against damage to which his own negligence may contribute, than that he should be given immunity by the shipper.

In Admiralty.

*Sidney Chubb*, for libelant.

*Butler, Stillman & Hubbard*, for claimant.

WALLACE, J. The proofs show satisfactorily that the libelant's merchandise was injured by the sea-water which entered the hold of the Hadji through the seams of the ballast-tanks, owing to the faulty construction of the tank. The top of the tank was not made sufficiently rigid; its motion removed the head of the rivets which fastened the seams between the several plates of iron forming the top, and the water from the tank entered by the opened seams. The goods were shipped under a bill of lading containing various restrictions of liability on the part of the carrier, among which was the following: "No damage that can be insured against will be paid for." Insurance was effected by the libelant in two marine insurance companies, and before the libel herein was filed the insurers paid to libelants the loss arising from the injury to the goods.

If the condition relieving the carrier from liability for "any damage that can be insured against," is to receive an unqualified construction, and be deemed to include a loss arising by the negligence of the carrier, it is obnoxious to public policy, and therefore void, according to the authorities which are controlling upon this court. The law, as tersely stated in Noy, Max. p. 92, "If a carrier would refuse to carry unless promise were made to him that he shall not be charged with any miscarriage, that promise is void," is the rule of the federal courts. He may stipulate, however, for such a reasonable modification of his common-law liability as is not inconsistent with his essential duties to the public; he may absolve himself from responsibilty as an insurer against accident or misfortune; but he cannot exempt himself from the consequence of his own negligence or that of his employes. Public policy demands that the right of the shipper to absolute security against the negligence of the carrier, and of all persons engaged in performing his duty, shall not be taken away by any arrangement or agreement between the parties to the service. *York Co.* v. *Central R. Co.* 3 Wall. 107; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Bank of Kentucky* v. *Express Co.* 93 U. S. 174. The same reasons that forbid the recognition of an express contract between the carrier and the shipper, exempting the former from liability for his own negligence, forbid a contract between them which is designed to work out the same result. That which cannot be done directly, will not be permitted to be done indirectly. If the carrier may refuse to carry unless the shipper will look to some other party in case of miscarriage, the result is the same, and the consequences to the public are the same, as though he refused to carry at all, unless upon his own terms as to liability.

In this view it is quite immaterial, under such a stipulation as is contained in the bill of lading, whether the shippers can or cannot obtain insurance which will protect from loss by the carrier's negligence, or whether the libelants actually did obtain such insurance. It suffices that the carrier cannot divest himself of his own responsibility for negligence by requiring the shipper to protect himself against it; and that an agreement having this operation is void.

Authorities are cited holding that the carrier may, by stipulation in his contract, reserve to himself the benefit of any insurance which the shipper may have effected upon the goods; and thus, although the loss might arise from his misconduct, may secure the indemnity taken by the shipper. These authorities fall short of the point. It is one thing to sanction a contract by which a carrier is permitted to indemnify himself against loss out of a fund which the shipper has received or may receive on account of the loss, and another to sanction one which requires the shipper to obtain such a fund as a condition of the carrier's undertaking, or which absolves the carrier from liability in default of obtaining the fund.

*Rintoul* v. *New York Cent. R. Co.* 17 FED. REP. 905, was a decision of this court. The bill of lading contained a clause providing that in case of loss or damage to the property transported, whereby any legal liability might be incurred, the carrier should have the full benefit of any insurance that might have been effected on the property by the shipper. The learned judge who decided that case placed the right of the carrier to enforce such a stipulation upon the ground that the shipper was under no obligation to insure, and the stipulation was not, therefore, one in effect to exempt the carrier from liability. He states: "If it was a part of the bill of lading that the owner must insure for the benefit of the carrier, such condition would be unfair." This observation applies to the contract which was sustained in the case of *Phœnix Ins. Co.* v. *Erie & Western T. Co.* 10 Biss. 18; and in the case of *Carstairs* v. *Mechanics' & Traders' Ins. Co.* 18 FED. REP. 473, where a similar stipulation was held valid.

It is true, as all these cases assume, that a common carrier may make a valid contract of insurance for protection against the consequences of his own negligence. He is under no higher obligations towards the insurer not to be careless, than is any other party who desires insurance; and one of the principal objects contemplated by the contract of insurance is the protection against loss to the assured, of which the primary cause may be his negligence, or that of his agents. Ang. Ins. § 125. This being so, it does not seem unreasonable to hold the shipper to the contract he has seen fit to make with the carrier. But it is quite another thing to permit a carrier to compel the shipper, as a condition for the transportation of his goods, to enter into an independent contract with a third party for the carrier's benefit, in order that the latter may escape loss arising from his own conduct. It may be that, when the carrier insures himself,

he will charge the shipper a higher price for carrying his goods, while, if the shipper agrees to insure for the carrier's benefit, he may get a lower rate from the carrier; but the objection to the condition lies in its tendency to impose upon the shipper the burden of protecting himself against a risk which it is the carrier's duty to assume, and which the law will not permit him to evade. The only effect that can be given to the stipulation here is by construing it as exempting the claimants from liability for any damage that the shipper could insure against, not arising from the carrier's own negligence, (*Yale Co.* v. *Central R. R.* 3 Wall. 107; *Bank of Kentucky* v. *Adams Exp. Co.* 93 U. S. 174;) and in the courts of this state, where it is held that carriers may, by express contract, exempt themselves from liability arising from their own negligence, the rule is that when the general words may operate without including the negligence of the carrier or his servants, it will not be presumed that it was intended to include such negligence in the exemption. *Wells* v. *Steam Nav. Co.* 8 N. Y. 375; *Steinweig* v. *Erie Ry. Co.* 43 N. Y. 123.

In the case of *Mynard* v. *Syracuse, etc., R. Co.* 71 N. Y. 180, the contract released the carrier from "all claims on account of any damage or injury to the property, from whatsoever cause arising." But it was held that the exemption did not include an injury arising from the carrier's negligence.

It is the first duty of a common carrier by water to provide a vessel tight, stanch, and fit for the employment for which he holds it out to the public. Ang. Car. § 173. The breach of this duty is the personal default of the vessel-owner. *Lyon* v. *Mells*, 5 East, 428. The loss sustained by the libelants, therefore, arose from the carrier's own negligence.

The other points urged by the appellants as a defense to the action are not of sufficient merit to require consideration.

The decree of the district court is affirmed, with interest and costs.