(129 App. Div. 299.)

### FEIN et al. v. WEIR.

(Supreme Court, Appellate Division, First Department. December 24, 1908.)

1. CARRIERS (§ 76*)—LOSS OF GOODS—RIGHT TO SUE.

   The right of a consignor to sue a carrier for loss of goods depends on whether the title to the goods remains in the consignor after delivery to the carrier for transportation.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 262–265; Dec. Dig. § 76.*]

2. FRAUDS, STATUTE OF (§ 89*) — CONTRACT OF SALE — CONSIGNOR'S RIGHT TO SUE.

   Where plaintiff's contract for the sale of goods shipped to the consignee by defendant carrier, and claimed to have been stolen, was unenforceable under the statute of frauds, and the goods were sent subject to inspection and approval before the buyer would be liable for the price, delivery to the carrier was not an acceptance by the buyer, and hence the seller was entitled to sue the carrier for the loss.

   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 177; Dec. Dig. § 89.*]

---

3. CARRIERS (§ 108*)—LOSS OF GOODS—CONVERSION.
    Where goods delivered to a carrier for transportation are either lost or stolen by the carrier's servants, the carrier is liable as an insurer for their conversion.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 471–495; Dec. Dig. § 108.*]

4. CARRIERS (§ 134*)—LOSS OF GOODS—DELIVERY TO CARRIER—EVIDENCE.
    In an action against a carrier for loss of goods, evidence *held* to justify a finding that the goods were delivered to an authorized agent of the carrier, and that they were never delivered by him at the carrier's office.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–590; Dec. Dig. § 134.*]

5. APPEAL AND ERROR (§ 204*) — REVIEW OF EVIDENCE — NECESSITY OF OBJECTIONS.
    Erroneous admission of evidence was not available to defendant on appeal, where no objection was taken at the trial thereto, or any motion made to strike it out.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1258; Dec. Dig. § 204.*]

6. TRIAL (§ 96*)—OBJECTIONS TO EVIDENCE.
    Where a part of a witness' testimony was admissible, a motion to strike out all of it was properly overruled.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 248; Dec. Dig. § 96.*]

7. CARRIERS (§ 133*)—LOSS OF GOODS—INTERVIEWS WITH AGENT.
    In an action against a carrier for loss of goods, interviews with the carrier's agent in an attempt to locate the goods were admissible.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 583; Dec. Dig. § 133.*]

8. EVIDENCE (§ 121*)—DECLARATIONS OF AGENT—RES GESTÆ.
    Declarations of a carrier's agent, made while acting within the scope of his authority and during the continuance of his agency, in regard to a transaction pending at the time with reference to the discovery of goods for the loss of which plaintiffs sued, were admissible against the carrier as res gestæ.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 308; Dec. Dig. § 121.*]

    Ingraham and Scott, JJ., dissenting.

    Appeal from Trial Term, New York County.

    Action by Jacob Fein and others against Levi C. Weir, as president of the Adams Express Company. From a judgment for plaintiffs, and from an order denying defendant's motion for a new trial, he appeals. Affirmed.

    Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

    Cravath, Henderson & De Gersdorff (Joseph P. Cotton, Jr., of counsel, and Kenneth B. Halstead, on the brief), for appellant.
    Milton Dammann, for respondents.

    CLARKE, J. Plaintiffs are manufacturers of clothing. On the 7th of February, 1906, they made up five packages containing suits and jackets addressed to five different consignees, two at Nashville, Tenn., one at Baltimore, Md., one at Canton, Ohio, and one at Newark, N. J. The value of the goods so packed was $728, and the value of each

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Index

package was over $50. These goods were made to order according to sample and according to number. The testimony is:

"The orders for the goods which are shipped to the respective people contained in the packages which are the subject-matter of this action were taken by my salesman. He took these orders through showing samples, and if the goods were satisfactory and up to the customer's way of thinking that they were all right as far as style and everything was concerned, and the price, they were bought. There was no written memorandum or anything made out and signed by the customer himself."

The plaintiffs have been sending goods by the Adams Express Company and other express companies for many years. The wagon of the express company was accustomed to call at the plaintiffs' place of business for express matter. On the day in question, the packages were taken down to the street in expectation of the regular call. The wagon not coming, an employé of the plaintiffs' went to the office of the Adams Express Company and told them to send up a wagon, and the agent of the company said they would. In about 15 minutes thereafter, a wagon of the Adams Express Company arrived in charge of a driver wearing the uniform and cap of the company with its name thereon. The packages were delivered to this driver, as well as other packages, by the employés of another concern having its place of business in the same building as the plaintiffs. The plaintiffs had a book of receipts of the company and had made out a receipt for the five packages duly entering the names of the consignees and the destination of the packages. This receipt was the ordinary receipt of the express company and bore at the top, "The company's charge is based upon the value of the property which must be declared by the shipper," and, among the terms of the contract, the following:

"In consideration of the rate charged, for carrying said property, which is regulated by the value thereof, and is based upon the valuation of not exceeding $50, unless a greater value is declared, the shipper agrees that the value of said property is not more than $50 unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than $50 if no value is stated therein."

No value was stated upon the receipt, but there appears stamped thereon by a rubber stamp in front of the entry of each package, "Value asked and not given." This receipt was signed by the driver, "H. Katz," and in a circle the numeral "6," and delivered to the plaintiffs.

About three days after this occurrence, the plaintiffs having received telegrams from their customers, an employé went to the office of the Adams Express Company located on Fourteenth street between Fifth avenue and University place, where he had been many times before, and saw an agent of the company whom he had seen in the course of business and conversed with him upon business with the company many times. The witness told the agent that they had heard from the different people to whom they shipped the goods that they had not received the goods yet, and asked him to look into the matter, and the agent said he would. A few days later this agent called at the plaintiffs' place of business with another man and stated to the witness that this other man was a detective for the company:

"He asked me how many packages we shipped on February 7th, and I told him, and he asked me all the particulars about it, how we shipped it, and who took the packages down, and the description of the man who received the packages, and questions similar to that."

Another employé of the plaintiffs testified: That he went to the office of the company about these particular packages, and saw the same agent, and told him that the people to whom he sent the goods had not received them, and that they sent a notice; that the agent said in reply that he would trace the goods; that subsequently this same agent told the witness that he should go down to the office at Canal street and see if he could identify the man who signed the receipt; that they had traced the packages already, and they did not receive them; that the Adams Express Company had not received those particular packages; that the witness went to the Canal street office with two men from other concerns who had delivered goods on the same day; that they had a lot of men lined up there, and the witness and his companions were asked if they could identify this man who took the packages; that they could not identify any one of the men as the driver; that they went to the stable of the company and were shown the different horses, but that the witness could not identify the horse; and that they went to another place and were asked if they could identify any man who came out of there as the one who had taken the packages which they were unable to do.

One of the plaintiffs testified that after the occurrence of February 7th, and after their employés had gone to the office of the company to complain about this merchandise not having been received, he went himself and had an interview with the same agent:

"When I called there the first time, I asked him about these packages. It was about six days after we had shipped the goods. He says to me, 'Well, I guess they were stolen by somebody,' and I says, 'You had better trace those things up, because these goods have been ordered by people, and they are seasonable goods, and unless they are delivered quickly they are worthless.' * * * So he says he would look it up and trace it. After the time of this visit, I did not again see this man for four or five days. I told him the same thing, that I have got requests from these consignees, that these goods haven't been delivered, and that we must replace them with other goods, as they were very much in need of this merchandise that we shipped them, or we must replace them. And I told him that, unless he could locate these goods immediately, we wouldn't be able to use the goods, and we will have to replace them by others, and he says to me, 'I guess those goods were stolen by somebody.' He says to me, 'I guess those goods were stolen.' 'Well,' I says, 'If that is the case, we will have to replace them by new merchandise, and, if these goods show up later on, we won't be able to use them. They won't be worth as much money then as they are to-day.' He told me he had put a tracer on those packages, and they couldn't locate them, and that they would send a detective to find out—locate the party that had signed for these packages—but they couldn't trace them. He told me that these packages were not received at that office, the Fourteenth street office, and that he knew that they weren't received there."

There was other corroborative evidence as to the delivery of the packages to the driver and the subsequent attempts at the request of the company of identification of the man and horse, and one witness identified the horse.

The defendant produced a witness who testified that she knew the name of every ·driver, helper, or extra man employed by the express company, and that on the 7th day of February, 1907, there was not a driver in the employ of the company by the name of H. Katz.

The learned court charged the jury, the defendant having denied delivery to it, that:

"It is a case in which one of the crucial points that must be considered by you is whether or not there was an actual delivery to the agent of the defendant. * * * The plaintiffs therefore must, by preponderance of evidence, convince you: That these goods were in fact delivered to an agent of the defendant company; that, as a matter of fact, after being so delivered, they were converted or stolen by some agent of the company; and that· by reason of such delivery to an agent of the company, and such wrongful and illegal act on the part of the servant of the company, the plaintiffs sustained their damage. * * * If you find that the goods as a matter of fact were delivered to an agent of the defendant, and if you further find that as a matter of fact the person who acted for the defendant, the agent of the defendant, stole the goods, then I charge you the defendant would be liable for the acts of its agents in respect to that particular act, because this man, if he were an agent of the company, was acting within the scope of his employment, and plaintiffs would be justified in handing him the goods, and any act of the agent would be an act for which this defendant would be liable. Corporations and individuals alike are liable for the acts of persons they employ to do a certain line of his business, providing the act is within the scope of such person's authority."

Alluding to the provision of the receipt limiting liability to $50, where the value was not declared, the court said:

"In this case, however, the jury would be justified in disregarding this particular clause, provided they find that the goods so delivered to the defendant were stolen by an agent of the defendant. In other words, a party cannot make a contract which, by limitations of this kind, would relieve him from the responsibility of a willful or tortious act of the servant."

The jury returned a verdict for the full amount proved, $728, and from the judgment entered thereon, and the order denying motion for new trial, defendant appeals.

Although in its answer the defendant denied delivery to it and objected to the proof tending to show that the driver and the person interviewed at its office were agents of the company, no such question is presented upon this appeal. The appellant states in its brief:

"There is no dispute on this appeal that the packages in suit were delivered to an employé of the Adams Express Company, as asserted in respondents' brief. It also appears from the evidence that the agent at defendant's Fourteenth street office stated that these same packages had not been received."

In the same brief there·is also this statement:

"The appellant on the argument of this appeal in this court declines to take advantage of any limitation or exemption of liability contained in the shipping receipt, since the question of the .interpretation of its receipt and the effect of section 20 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), is in no wise material."

The appellant presents the following contentions: First, that plaintiffs are. not entitled to maintain this action, because they are not the owners of the goods to recover for the loss of which this. action is brought.

The plaintiffs were the consignors. The claim is that the cause of action vested in the consignees. The right to recover damages against a common carrier is determined by the answer to the question of where the title to the goods delivered to it for carriage remains. The presumption is, ordinarily, that the consignee is the owner of the goods; but this presumption is rebuttable.

In Angell on Carriers, at section 495, it is said:

"Where goods are sent by a party merely to be approved, the property not passing to the consignee until he receives and adopts the goods, the consignor is entitled to bring the action against the carrier for any breach of his implied undertaking to deliver the goods. Thus, a coat ordered by a customer resident abroad, without instruction as to the mode of conveyance, and which was sent through by the tailor who paid the freight, and the coat being lost in the transit, it was held that the vendor was the proper party to sue the carrier. Goodwyn v. Douglas, Cheves (S. C.) 174."

Section 496:

"Again, if from fraud or noncompliance with the requirements of the statute of frauds no actual sale has taken place, so as to transfer the right of property and the risk of loss from the consignor to the consignee, the consignor is, of course, the proper party to maintain the action. So, if a tradesman sends goods of the value of £10 and upward, pursuant to an oral order or an oral contract of sale, to a person who has not given earnest or made a part payment or accepted any part of the goods, and the contract is void by reason of noncompliance with the statute of frauds, then, as there has been no actual sale so as to transfer the right of property and the risk of loss to the consignee, the consignor is the party to sue the carrier. [Citing cases.] In Coates v. Chaplin, 3 Q. B. 489, it appeared that the traveling agent of M., a tradesman residing in London, ordered goods for M. of the plaintiff, a manufacturer at Paisley. No order was given as to sending the goods. Plaintiff gave them to defendant's carrier directed to M., to be taken to him, and also sent an invoice by post to M., who received it. The goods having been lost by the defendant's negligence, it was held that the defendant was liable to the consignor."

In Schouler on Bailments and Carriers, § 465, it is said:

"The consignor is pronounced the proper party to bring the action against the carrier where he plainly continues to be the owner throughout the transit and was necessarily so at the time when the loss or injury in question must have occurred, such as is the case where an owner transports goods by a carrier which are to be sold on commission (Sanford v. Housatonic R., 11 Cush. (Mass.) 155); or where the goods are so sent on a conditional sale to the consignee that a complete transfer of title and property therein must await their arrival and the full accomplishment of the carrier's service (Swayne v. Sheperd, 1 Moo. & R. 224); or where, because of a vendee's fraud or noncompliance with the statute of frauds, no transfer of the right of property and risk of loss has actually taken place, but the consignor remains the owner (citing cases)."

So in this state (Price v. Powell, 3 N. Y. 322) Bronson, C. J., said:

"Although the consignee is presumptive owner of the property shipped, it is a presumption which may be and which was, I think, sufficiently rebutted in this case."

In Green v. Clarke, 12 N. Y. 343, Marvin, J., said:

"If goods are lost or damaged by the carrier, the party to sue for such loss or damage is he in whom the legal property in the goods was vested. * * * I am not aware that it has ever been doubted that the owner of the goods may maintain an action on the case against the carrier for negligence and care-

lessness by which the goods have been injured or lost. * * * It has often been made a question whether the title to the goods was in the plaintiff, but, that question being settled, the decisions are uniform that the owner is the proper party to bring the action, whether he is the consignor or consignee. As a rule of evidence prima facie the title is in the consignee."

In Sweet v. Barney, 23 N. Y. 335, James, J., said:

"The consignee is the presumptive owner of the thing consigned, and, when the carrier is not advised that any different relation exists, he is bound so to treat the consignee; but this presumption may be rebutted, and if, in an action for nondelivery, by the consignor against the carrier, that presumption be overcome, the action is properly brought in the consignor's name."

In Krulder v. Ellison, 47 N. Y. 36, 7 Am. Rep. 402, Peckham, J., upon a review of the cases, and after stating the general rule that the consignee is the proper party to sue, noted the qualification of said rule, and said:

"Where the contract of purchase and sale is not valid or complete by reason of the statute of frauds, the goods being over the value of £10, and the title therefor still vests in the consignor, though the goods have been delivered to the carrier, no acceptance, and all still vesting in parol, the action must be brought by the consignor. Coombs v. The Br. & Ex. R. Co., 3 Hurl. & Nor. 510. But all the judges in delivering opinions admitted the rule to be that the consignee must have brought the action had the order been in writing, and the sale valid. The question was whether the property passed to the vendee. If it did, he must sue."

I am satisfied in the case at bar that no title passed to the vendee, and that the vendor had no cause of action against the vendee for the purchase price of the goods in question. The evidence shows: That the goods were ordered of traveling salesmen on samples and were made upon such orders by the plaintiffs; that there was no memorandum in regard thereto signed by the consignee; that each package of goods was upwards of $50 in value; that no part of the price thereof had been paid, and the goods were sent subject to inspection and approval, and if the vendees were satisfied upon such inspection and approval as to style, quality, material and price, they were to be bought. That being the case, delivery to the common carrier cannot be held to be acceptance by the consignee, and the facts bring the case directly within the authorities hereinbefore cited.

Second. Appellant claims that the trial judge erred in leaving the question of conversion to the jury.

Undoubtedly, the complaint alleges conversion, and the judge distinctly presented that issue to the jury. Due exception was taken, and, if the evidence does not sustain conversion, the judgment cannot stand. The defendant can only be held as for a conversion in this case upon sufficient proof to establish that its agent to whom the goods had been delivered stole them. If there is such proof, the defendant is liable.

Schouler on Bailments and Carriers, § 429, says:

"All such liability for neglect or default of servants transcends the rules of agency so as to render the carrier liable absolutely for the felony or wilful wrong of his servants. Stevens v. London R., 18 Q. B. D. 121. The fraud or misconduct of the carrier or his servants which occasions the loss forbids, therefore, his exemption on any plea."

The general rule long since laid down in England, and followed in this country, as to the liability of carriers, was expressed by Chief Justice Best, in Reilly v. Horne, 5 Bing. 217:

"When goods are delivered to a carrier, they are usually no longer under the eye of the owner. He seldom follows or sends any servant with them to the place of their destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss. His witnesses must be the carrier's servants, and they, knowing that they could not be contradicted, would excuse their masters and themselves. To give due security to property, the law has added to that responsibility of a carrier which immediately arises out of his contract to carry for a reward, namely, that of taking all reasonable care of it, the responsibility of an insurer. From his liability as an insurer the carrier is only to be relieved by two things, both so well known to all the country when they happen that no person would be so rash as to attempt to prove that they had happened when they had not, namely, the act of God and the King's enemies."

Of this it is said in Angell on Carriers, § 153:

"The English books, it may be added, abound with strong cases, in which the above salutary rules have been enforced; and the steady and firm support which the English courts of justice have uniformly and inflexibly given to them, without yielding to the hardships of the particular case, has in our country met with unqualified approbation, and declared by the best authority worthy of admiration"—citing 2 Kent Com. p. 602 (10th Ed. p. 834).

In Nowack v. Met. St. Ry. Co., 166 N. Y. 433, 60 N. E. 32, 54 L. R. A. 592, 82 Am. St. Rep. 691, Vann, J., said:

"We have the general rule that a principal is liable to a third person in a civil action for the fraud or other malfeasance of his agent, perpetrated by the latter in the course of his employment, although the act was ultra vires and the principal did not authorize, justify, or know of it."

One of the cases cited is Fifth Avenue Bank v. Forty-Second St., etc., R. R. Co., 137 N. Y. 231, 33 N. E. 378, 19 L. R. A. 331, 33 Am. St. Rep. 712, where it is said the obligation of a principal for the acts of his agent—

"are embraced in the comprehensive statement of Story, in his work on Agency (9th Ed.) § 452, that the principal is to be 'held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize, or justify or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them. In all such cases the rule applies respondeat superior and is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, either directly with the principal or indirectly with him through the instrumentality of agents. In every such case the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency.'"

This rule was applied to an agent of a telegraph company, who received payments of false bills, in an action to recover from the company for money had and received (Birkett v. Postal Telegraph Cable Co., 107 App. Div. 115, 94 N. Y. Supp. 918, unanimously affirmed, 186 N. Y. 591, 79 N. E. 1101); and by this court to a messenger boy, who presented and collected false bills (Wilmerding v. Postal Telegraph Cable

Co., 118 App. Div. 685, 103 N. Y. Supp. 594, unanimously affirmed 85 N. E. 1118).

In the dissenting opinion in Wamsley v. Atlas Steamship Company, 168 N. Y. 533, 61 N. E. 896, 85 Am. St. Rep. 699, it was said:

"The evidence in this case, while possibly open to conflicting inferences, justified the conclusion that the defendant corporation, by the acts of its servants, was chargeable with the conversion of this box."

In the prevailing opinion the court said:

"Conceding that the defendant is liable in conversion for the misfeasance of its servants, we must also admit that the evidence does not affirmatively disclose any such misfeasance. As we have seen, the theft or loss of the goods through the mere nonfeasance of the carrier does not render him liable in conversion. The mere fact that the box was actually on board the defendant's ship is not necessarily inconsistent with the view that it may have been stolen or lost. If, for instance, the box had been stolen by one for whose acts the defendant was not responsible, it would be none the less a theft, because it had been secreted in some inaccessible part of the vessel, instead of being hidden elsewhere. * * * These suggestions sufficiently indicate the necessity, under the evidence herein, of a direct and explicit charge to the jury that the plaintiff could not recover in this action unless he had made proof of actual conversion."

As I understand the Wamsley Case, it is to the effect that, if the evidence had sustained a finding that the box had been stolen by one for whose acts the defendant was responsible, conversion by the defendant would have been sustained. In the case at bar there is no doubt of the explicit and direct charge to the jury that conversion could not be sustained unless the jury found that the defendant's agent had stolen the goods. The evidence in that regard was, of course, circumstantial, and is as follows: Within 15 minutes after a request to the express company to send a wagon, a wagon and a driver of the defendant came to the plaintiff's place of business and received the goods. The proof sustains the finding, and the appellant concedes upon this appeal that that driver was its agent. He signed a receipt for the goods with the name "H. Katz." The defendant proved that it had no driver in its employ on the date in question by that name. The inference follows that the driver signed a false name. The defendant's agent said that the goods had never come to its office. The goods were addressed to five different consignees in four different states. That none of them were received by the consignees is proof that none of them were started on their way. The investigation made by the defendant, its sending its agents to interview the employés of the plaintiffs, and its attempts to have them identify the driver and his horses are facts which, taken with the foregoing, present, as it seems to me, a case for the determination of the jury upon which they could properly draw the inference that the agent of the company intended to steal the goods when he signed a false name to the receipt, and carried out said intention when it is proved that he did not deliver the same to the office of the company. The jury, who were the judges of the facts, so found, and, as I think, were justified in so doing.

Third. The appellant further urges that the trial judge erred in admitting evidence of statements by defendant's agent that he guessed the goods in suit were stolen.

This expression of opinion upon the part of the agent of the defendant was not evidence of the fact. No objection, however, was taken to this statement by the witness, and no motion made to strike it out. It does not appear to have been called to the attention of the trial judge, and the point is raised for the first time upon appeal. What the defendant did object to was any statement made by this man, who, it is now conceded, was the agent of the defendant, and he moved to strike out all of his testimony. The testimony of the witness as to interviews with this agent, in the attempt to locate the goods, was admissible. The objection and motion were both too broad. It therefore seems to me that the question is not properly before us, and that the judgment should not be reversed on that ground. The other declarations of this agent were made while acting within the scope of his authority and during the continuance of his agency, and in regard to transactions pending at the very time, and were so properly admissible against his principal as part of the res gestæ.

In Price v. Powell, 3 N. Y. 322, an action against a carrier, it was held that the conversation between the master of the vessel and the consignee, at the time the latter opened the boxes, related to the acts and duties of the master concerning the subject in hand, and before he had fulfilled his obligation by delivering the property to the consignee, and so were properly admitted.

The judgment and order appealed from should be affirmed, with costs.

PATTERSON, P. J., and LAUGHLIN, J., concur.

INGRAHAM, J. I concur with Mr. Justice CLARKE that the defendant's contention that the plaintiffs could not, as the consignors of the merchandise, maintain the action, was properly overruled. I do not concur with him, however, in the statement that there was any evidence to justify the jury in finding that the defendant was guilty of conversion. There is no competent evidence in the case that the consignees never received these goods. Plaintiffs so allege in the complaint, but the defendant denies that allegation in the answer, and there was no express evidence that the merchandise had not been delivered. The only evidence in that respect that I can find in the record was that the plaintiffs or some of its employés made statements to the defendant that the goods had not been delivered, but this certainly was no evidence of that fact. The contract was to transport this merchandise and deliver it to consignees in the states of Tennessee, Maryland, Ohio, and New Jersey, and, of course, a delivery to the consignees would have been a compliance with the contract and would have prevented a recovery for either a breach of contract or conversion.

At the close of the plaintiffs' case, the defendant moved to dismiss the complaint on the ground that the plaintiffs had absolutely failed to prove nondelivery to the various consignees, and that motion was again renewed at the end of all the testimony. The only evidence that can be said to have any bearing upon the question as to whether these goods had been stolen by one of the defendant's employés was a statement by an employé of the defendant in charge of one of the defend-

ant's offices that the packages had not come to that office. I am inclined to think that, if there was evidence that the packages had never been delivered, there would then have been evidence for the jury as to whether or not there was a conversion by the defendant, leaving it for the express company to explain if it could what had become of the packages; but, in the absence of any direct evidence that the goods were not transported and delivered to the consignee, I do not see how the action could be maintained. The fact that the defendant took measures to try and trace the goods when the plaintiffs had reported that they had not been delivered is not evidence of nondelivery, nor is it evidence of nondelivery that one of the defendant's employés stated, in answer to the plaintiffs' claim that the goods had not been delivered, that he guessed they had been stolen. The prevailing opinion seems to assume that the evidence was that these packages had not been delivered. I can find no such evidence in the record, and nothing to justify a finding of nondelivery. It seems to be conceded that this guess of the defendant's employé was not competent, but whether competent or not it clearly proved nothing, and it seems to me that the fact of nondelivery to the consignees was the entire basis of the plaintiffs' right to recover, whether in conversion or for a breach of the contract; and there being no evidence in the case, and a motion to dismiss having been made upon that ground, I do not see how the judgment can be sustained.

I therefore dissent.

SCOTT, J., concurs.