## MOORE v. DUNCAN.

(Circuit Court of Appeals, Sixth Circuit.    November 17, 1916.)

No. 2850.

1. CARRIERS ⬧⟾158(1)—CARRIAGE OF GOODS—LIMITATION OF LIABILITY.

A contract limiting the carrier's liability to an agreed valuation, in consideration of a lesser freight rate, is valid on the theory that by freely and deliberately electing to contract for carriage at a rate fixed on the agreed value the shipper is estopped to assert a higher value in case of loss or damage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 663; Dec. Dig. ⬧⟾158(1).]

2. CARRIERS ⬧⟾30—CARRIAGE OF GOODS—TARIFFS—PUBLISHED TARIFFS.

A tariff for interstate transportation, duly published and filed with the Interstate Commerce Commission pursuant to law, is, so long as in force, binding on the carrier and shipper, having the effect of a statute.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. ⬧⟾30.]

3. CARRIERS ⬧⟾131—CARRIAGE OF GOODS—ACTIONS.

The petition of plaintiff, who sued for the loss of tin shipped over defendant's line, charged that, while the car containing the tin was in the custody of the defendant as a common carrier, a portion of the shipment was stolen by agents and employés of defendant while employed in connection with its transportation, and that such theft was committed by such agents and employés either alone or in conspiracy with other persons unknown to plaintiff. *Held*, that the petition charged a theft of goods in transit by employés of the carrier acting, not in the carrier's interest, but in their own, and against its interest.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 569–577, 593; Dec. Dig. ⬧⟾131.]

4. CARRIERS ⬧⟾158(1)—CARRIAGE OF GOODS—ACTIONS—LIABILITY.

A carrier published two rates for the transportation of tin, the lesser one being based upon a released valuation. A shipper, knowing of the two rates, paid the lesser and accepted a bill of lading declaring that the amount of loss or damage for which the carrier was liable should be ascertained on the basis of the released valuation, whether or not the loss occurred from negligence. The servants of the carrier, acting in their own interest and against that of the carrier and shipper, stole some of the tin while in transit. *Held*, that as the servants were not acting for the benefit of the carrier, so as to enable it to confiscate the tin, the carrier was liable only for the released valuation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 698; Dec. Dig. ⬧⟾158(1).]

5. CARRIERS ⬧⟾149½—CARRIAGE OF GOODS—LIMITATION OF LIABILITY.

At common law, it is not against public policy for a carrier to stipulate against liability for loss due to causes beyond its control, and so the imposition, as a basis for a freight rate, of a condition that the shipper should assume the loss from such causes, is valid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 651–653, 660, 662; Dec. Dig. ⬧⟾149½.]

In Error to the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Action by Laura Moore against William M. Duncan, as receiver of the Wheeling & Lake Erie Railroad Company. Defendant confessed

⬧⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

judgment for part of the amount claimed, and plaintiff brings error. Affirmed.

Harrington, Bigham & Englar, of New York City, and Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio (Oscar R. Houston, of New York City, of counsel), for plaintiff in error.

Squire, Sanders & Dempsey, of Cleveland, Ohio (Robert F. Denison, of Cleveland, Ohio, of counsel), for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

KNAPPEN, Circuit Judge. The plaintiff in error, as assignee of the consignee of three separate shipments of pig tin from New York and Philadelphia to Steubenville, Ohio, over railroads forming connecting lines between the respective places of shipment and the place of delivery, sued the receiver of the terminal carrier on account of the loss of a portion of each shipment, charging that while the car containing the tin was "in the custody and control of the defendant and in course of transportation over the Wheeling & Lake Erie Railroad as a common carrier within the state of Ohio, pursuant to the said shipment," a portion of each shipment was stolen from the car containing it "by the agents and employés of the defendant, while employed by the defendant in connection with the transportation of the said car of tin over the lines of the Wheeling & Lake Erie Railroad, as above stated; that said theft was committed by the defendant's said agents and employés, either alone or in conspiracy or collusion with other persons to the plaintiff unknown." Judgment was demanded for the aggregate of the full values of the stolen lots, with interest. The defendant, in addition to a notice which amounted to a general denial, pleaded as a second defense that with respect to each shipment the defendant railroad formed with its connecting carrier a through line from the place of shipment to Steubenville; that through rates were in effect and joint tariffs therefor duly and legally published and on file as required by law, which tariffs put in effect two rates upon pig tin shipped from the respective places of shipment to Steubenville, one based upon a released valuation of $100 per ton, the other a higher rate when the shipments were not so released; that the shippers, knowing the tariff provisions, presented to the initial carrier bills of lading in form approved by the Interstate Commerce Commission, made out and signed by the shippers, with indorsement calling for the released valuation; that the shipment was carried under the lower rate; that the bill of lading contained a provision that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment * * * unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events, such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence"; and that the consignee, knowing the terms of the bill of lading and the provisions of the tariffs, paid the freight at the lower of the two published rates after knowing of the loss in shipment.

A demurrer to the second defense was overruled, and on defendant's confession of judgment for the value of the stolen tin at the lower tariff rate, with interest, judgment was rendered therefor.

The writ of error rests on the sole proposition that the released valuation does not apply to the facts alleged in plaintiff's petition, and that the legal measure of recovery is the full value of the tin stolen.

Counsel for plaintiff in error properly concede it to be the settled rule that:

"Although it is against public policy to permit a common carrier to stipulate for exemption from liability for negligence, it is not against public policy for a carrier to stipulate as to the value of the goods carried, and that such a stipulation, whether made by express agreement between the carrier and the shipper, or embodied in the schedules filed with the Interstate Commerce Commission pursuant to law, will be enforced in the ordinary case of loss through the carriers' negligence." [1]

[1, 2] The validity of a contract limiting the carriers' liability to an agreed valuation does not depend upon the relation of that value to the actual value. It rests upon the proposition that, by freely and deliberately electing to contract for carriage at a rate of compensation based upon an agreed value, the shipper is estopped to claim a higher value in case the shipment is lost or damaged. Pierce v. Wells, Fargo & Co., 236 U. S. 278, 283, 35 Sup. Ct. 351, 59 L. Ed. 576, and cases there cited. A published tariff, so long as it is in force, has the effect of a statute and is binding on carrier and shipper. Pennsylvania Ry. Co. v. International Coal Min. Co., supra.

[3-5] It will be noticed that, by the express contract of the parties as contained in the bill of lading, "the amount of any loss or damage" for which the carriers are liable shall be ascertained on the basis of the valuation "whether or not such loss or damage occurs from negligence"—a stipulation broad enough in its terms to cover theft by an employé. But we assume that, if the carrier had in effect purposefully taken the goods or actually benefited by their confiscation or conversion, it would not be permitted, upon grounds of public policy, to limit its liability under the contract of carriage. Such, however, is not the case alleged. Actual conversion by the carrier to its own use is not charged. The allegation in the petition is not only consistent with but, naturally interpreted, we think charges a theft from a car in transit by employés of the carrier, presumably acting, not in the latter's interest and for its benefit, but against the carrier's interest and to its injury as well as that of the shipper; for by the employé's wrongful act the carrier, instead of being benefited, is directly injured through its liability to the shipper.

The controlling question thus is whether it is competent for the car-

[1] Hart v. Pennsylvania Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Kansas City So. Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; M., K. & T. R. Co. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Pennsylvania Co. v. International Coal Min. Co., 230 U. S. 184, 33 Sup. Ct. 184, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Boston & Maine R. R. Co. v. Hooker, 223 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; A. T. & S. F. R. Co. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556, 58 L. Ed. 901.

rier and shipper to extend the limitation of the carrier's liability for loss in the course of transportation to a theft by an employé in his own sole interest and against the interest of his employer.

In Missouri, Kansas & Texas Ry. Co. v. Harriman, supra, 227 U. S. at page 672, 33 Sup. Ct. at page 401, 57 L. Ed. 690, it is said that:

"The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence."

It was not, at common law, against public policy for a carrier to stipulate against liability for loss due to causes beyond its control; and so a condition imposed as basis for a freight rate that the shipper assume the risk of loss due to such causes is valid. In re Released Rates, 13 I. C. C. Reports, 550, 551, 564; Kansas City So. Ry. Co. v. Carl, supra, 227 U. S. at page 656, 33 Sup. Ct. 391, 57 L. Ed. 683; Adams Exp. Co. v. Croninger, supra, 226 U. S. at page 509, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

It is clear that, had the theft been committed by one not in the carrier's employ, the latter's liability would be limited to the released valuation. Indeed, plaintiff in error expressly concedes that, had the tin been lost in transit "by any other cause than theft by its own employés while acting within the scope of their authority, the valuation clause would be binding." Her contention, however, is that the released valuation has no application to a loss due to the "conversion by the carrier's own employés while employed by the carrier in the transportation of the goods"—the pith of the argument being that the theft of goods in the course of transportation by an employé of the carrier, although solely for the benefit of such thieving employé, amounts to a conversion by the carrier—and that it is not competent for the latter to contract for a limitation of its liability for conversion.

Unless with one exception, the authorities cited by plaintiff in error in support of this proposition do not fully sustain it. In Fein v. Weir, 129 App. Div. 299, 114 N. Y. Supp. 426, although theft by an employé was held a conversion by the carrier, in the appellate court the question of limitation of liability was not involved. In Shelton v. Canadian No. Ry. Co. (C. C.) 189 Fed. 153, the shipment was converted by the carrier to its own use. The reported decision contains no suggestion that theft by an employé would amount to an actual conversion by the carrier. In Georgia So. Ry. Co. v. Johnson, 121 Ga. 231, 48 S. E. 807, it was said by Justice Lamar that:

"In an action of trover or damages for conversion, the tort-feasor could not take advantage of his own wrong, nor lessen the measure of his liability, by invoking an agreed valuation which the plaintiff may have made for the purpose of reducing the freight rate or securing like collateral advantage."

But this was merely a statement of a general proposition. The case involved no question as to what made the carrier a tort-feasor so as to make the rule stated applicable.

In Central of Georgia R. Co. v. Chicago Portrait Co., 122 Ga. 11, 49 S. E. 727, 106 Am. St. Rep. 87, the rule stated by Justice Lamar

in the Georgia Southern Case was applied to a case of actual conversion by the railroad company, by selling merchandise as unclaimed freight after its transportation to destination in good order, and before such sale could lawfully be made.

The case presenting the possible exception referred to is Adams Exp. Co. v. Berry & Whitmore, 35 App. D. C. 208, 31 L. R. A. (N. S.) 309, where it was held, in substance, that an embezzlement of goods by an employé of the carrier amounted to a conversion entitling the shipper to recovery of full value, notwithstanding the limitation in the shipping receipt of liability to a specific sum, less than such value; the court saying that an agreement "that the company shall not be liable in any event for more than the value so stated" was intended to apply only to a loss "through the negligence of the carrier," and that an extension "to cover cases where the goods are converted or embezzled by it" would be invalid.

We are unable to agree with the holding in that case, as applied to the instant case. It overlooks the fact that it was entirely competent at common law, and no less so under the existing federal statutes, to limit liability for loss not within the carrier's control. Concededly, it would not be violative of public policy to contract for limited liability in case of theft by a stranger. We can see no valid ground for holding such contract invalid in case of theft by an employé for his own sole purposes and against the interests and without the connivance of the carrier. Theft of goods in transportation, and in the possession of the carrier for such purpose, is a theft from the carrier itself. Theft, under the circumstances stated, whether by a stranger or by an employé of the carrier, involves no misfeasance or lack of faithfulness on the part of the carrier. Such negligence of the carrier as may be involved in making theft possible is manifestly covered by the stipulation.

None of the decisions of the Supreme Court of the United States before cited, relating to limitation of liability for loss, involved cases of theft; but neither those nor any other decisions of that court, so far as we have found, in our opinion favor the doctrine asserted by plaintiff in error. On the contrary, we think the general propositions announced therein opposed to that doctrine. For example, in Kansas City So. Ry. Co. v. Carl, supra, 227 U. S. at page 651, 33 Sup. Ct. at page 394, 57 L. Ed. 683, the broad and unqualified statement is made that:

"When a shipper delivers a package for shipment and declares a value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped upon plain principles of justice from recovering, in case of loss or damage, any greater amount."

We think the reasoning of the case of Georgia, etc., Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948, although not involving limitation of liability, is impliedly opposed to the proposition of constructive conversion here asserted, and holds that the effect of the stipulation of the bill of lading is not dependent on the form of action chosen in suing for the loss.

We think the contract in question which limited liability to the re-

leased valuation is just and reasonable; that it violates no rule of public policy and is valid and enforceable.

It follows that, in our opinion, the judgment of the District Court was right and should be affirmed.