F. A. STRAUS & Co., INC., Respondent, *v.* CANADIAN PACIFIC RAILWAY COMPANY, Appellant.*

First Department, November 29, 1929.

* Revg. 134 Misc. 439, unless plaintiff stipulates to reduce judgment.

*Harold B. Elgar* of counsel [*Frank Rashap* with him on the brief; *Hardin, Hess, Eder & Freschi*, attorneys], for the appellant.

*Neil P. Cullom* of counsel [*James E. Freehill* and *Henry W. Steingarten* with him on the brief], for the respondent.

MARTIN, J. The defendant, a common carrier, failed to deliver three bales of silk received for shipment and it is alleged converted same to its own use. By this action the plaintiff seeks to recover $1,763.59, the value of the silk.

At the trial the court submitted, without objection by the defendant, the following issues to the jury: (1) Did the theft of plaintiff's merchandise occur through defendant's negligence; and (2) was the theft committed by one of defendant's own servants?

The jurors were instructed that if they found that the theft occurred through defendant's negligence and was committed by one of its own employees, they might disregard the limitation of liability contained in the bill of lading and return a verdict for the full amount claimed by plaintiff.

The jury returned a verdict in favor of the plaintiff, holding that the theft occurred through defendant's negligence and by one of its servants.

The only evidence submitted to the jury was a stipulation of agreed facts. It was therein agreed that the silk in question was delivered aboard the defendant's vessel, the steamship *Empress of Russia*, on February 8, 1925, at Shanghai, China, to be delivered in New York city; that the silk was stowed in the silk room of the steamer and the room was guarded by " four Hindu watchmen permanently employed by the defendant; " that when the ship arrived at Kobe, it was discovered that the lock of the silk room was broken, and upon arrival at Vancouver, these particular goods were missing. It was discovered that a piece of pipe, such as is used for opening the butterfly bolts securing the side door of the ship, was found near the starboard side door. It is the contention of the respondent that these four Hindu watchmen were guarding the silk during the very period that the theft occurred, and it is difficult

to conclude that this theft was not committed either by one of these Hindu watchmen or some one acting in concert with them.

The defendant offered no evidence as to the care with which the plaintiff's merchandise was guarded, if guarded at all; it offered no proof that the Hindu watchmen remained on guard for the period of time during which the ship was in port, nor did it offer proof as to its care in the selection of the men in whose custody the merchandise was placed. The bales of silk while they were in defendant's custody were stolen and the defendant failed to deliver the same to the consignee. Upon these facts, the jury was justified in drawing the inference that the theft was committed by an employee of the defendant company. (*United States ex rel. Matthews* v. *Mass. Bonding & Ins. Co.*, 238 N. Y. 334.) Where a carrier refuses to deliver goods, under such circumstances an action for conversion may be sustained. (*Fein* v. *Weir*, 129 App. Div. 299.)

The second question is whether section EW-2 of the contract is enforcible. It provides that the carrier shall not be responsible to any extent for any loss, damage or delay, arising from or consequent upon robbers, thieves of whatever kind, whether in the service of the carrier or not, for negligence, etc.

This provision is met by the Harter Act (27 U. S. Stat. at Large, 445, chap. 105, § 2; U. S. Code, tit. 46, § 191; U. S. Comp. Stat. § 8030) which provides that " it shall not be lawful for any vessel * * * to insert in any bill of lading or shipping document any covenant or agreement whereby * * * the obligations of the master, officers, agents, or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened, or avoided."

The law is well stated in *Knott* v. *Botany Mills* (179 U. S. 69), where the court said: " This express provision of the act of Congress [referring to the Harter Act] overrides and nullifies the stipulations of the bill of lading that the carrier shall be exempt from liability for such negligence, and that the contract shall be governed by the law of the ship's flag."

In Carver on Carriage of Goods By Sea (7th ed.), section 103-a, page 160, it is said that no effect is given to such clauses in the bill of lading where the contract is governed by the laws of the United States nor where the performance is to be wholly or partly within the United States.

In *The Skipsea* (9 F. [2d] 887) the law is stated as follows: " There was stamped on the bill of lading: ' The shippers, being satisfied with the stowage and with the conditions of carriage, release the ship from all responsibility for deterioration of the said goods.' This would not prevent recovery in view of section 3 of the Harter Act

(Comp. St. § 8031). *The Southwark*, 191 U. S. 1; 24 S. Ct. 1; 48 L. Ed. 65; *Andean Trading Co.* v. *Pacific Steam Nav. Co.* (C. C. A.) 263 Fed. 559. A stipulation that undertakes to exempt the ship from loss or damage arising from its negligence is void as against public policy. It is an effort to indirectly exempt itself from liability which it cannot stipulate directly. *Calderon* v. *Atlas S. S. Co.*, 170 U. S. 272; 18 S. Ct. 588; 42 L. Ed. 1033; *The Turret Crown*, (C. C. A.) 297 Fed. 766; *The Hadji*, (C. C.) 20 Fed. 875. The appellants should have recovered below for damage to the cargo in hold No. 2, due to the mixture of coal dust and water. They should also have recovered for such breakage as took place in the between decks and such breakage as occurred in holds 2 and 3. The measure of damages is the limit, fixed as 300 francs per package, in the bill of lading, less the salvage value of the onions, if any, which were damaged."

The contract also contains a clause known as clause EW-21, which provides that in case of loss the carrier shall not be liable for said goods or property beyond the sum of $10 per cubic foot, nor in any case exceeding $100 for any one package or any article not inclosed in a package *unless a higher value shall have been declared in writing at the time of the shipment and ad valorum freight paid* thereon. If this clause be enforcible, the judgment should be reduced to $300. If not, the judgment should be affirmed.

The courts have uniformly held that unless a choice of rates is given to a shipper, this clause is invalid. (*Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278, 283.)

The Court of Appeals has recently had a similar clause before it, and in *Kilthau* v. *International Mercantile Marine Co.* (245 N. Y. 361) the court said: " The clause of the bill of lading now under consideration provides for limitation of damages to $100 per package unless greater value is declared. The defendant offered shippers of commodities of greater value than $100 per package two different rates of freight: ' a lower one based on the bill of lading valuation and a higher *ad valorem* rate applicable if the shipment is declared to be of a value higher than the bill of lading valuation.' Here the value of the flour was much less than $100 per package. For shipments of goods of value less than $100 per package, the defendant had in effect only one rate, applying to shipments between San Francisco and New York, namely, 30 cents per hundredweight, the rate paid in this case. The limitation of value, for the purpose of fixing damages, to $100 per package was inconsequential here, since the goods were in fact worth less than that sum. Higher rates for carriage, if paid, were intended as consideration for assumption of greater risk. No alternative rate was made

for restriction of liability below the limit of value of $100 per package."

At page 365 the court further stated: " The rule is well established, at least in this State, that a carrier may limit its liability for damages caused even by its own negligence if the parties agree that recovery shall be limited to an agreed valuation which forms the basis of the charges fixed by the carrier, or where limitation is the consideration for other benefit to the shipper."

Where a shipper is given a choice of rates, one rate which limits the recovery to $100 per package and another higher rate which permits the recovery of damages which will fairly compensate for the loss, and the lower rate is accepted, the shipper is limited to $100 per package. (*Pierce Co.* v. *Wells, Fargo & Co., supra.*)

The shipper was here given ample protection by a choice of rates but evidently was satisfied with the lower rate. Under such circumstances the recovery is limited to the amount agreed upon by the parties.

The judgment should be reduced to the sum of $300, with interest and costs, and the judgment as so modified and the order appealed from should be affirmed, without costs.

DOWLING, P. J., FINCH, MCAVOY and O'MALLEY, JJ., concur.

Judgment modified by reducing the judgment as entered to the sum of $596.50, and as so modified the said judgment and the order appealed from are affirmed, without costs. Settle order on notice.