## KATZENBERG et al. LAMPORT & HOLT, Limited.

### No. 9642.

District Court, E. D. New York.

June 28, 1932.

Forrest E. Single, of New York City (Alonzo L. Tyler, of New York City, of counsel), for libelants.

Slayton & Jackson, of New York City (G. Noyes Slayton, of New York City, of counsel), for respondent.

GALSTON, District Judge.

The libel as originally filed alleged damage to a cargo of 4,000 salted hides placed on board the steamship Bronte in the Port of Buenos Aires to be carried to the Port of New York, in accordance with the terms of a certain bill of lading dated March 31, 1926, issued to the Burditt-MacGregor Corporation.

Damage to the cargo was alleged to have resulted from contact with water and other substances when the vessel arrived at the Port of New York on May 5, 1926.

On the 25th of April, 1930, the libel was amended to allege as the cause of the damage, the failure of the respondent properly to salt, brine, pickle, stow, and care for the hides, and for other causes to be shown upon the trial of the action.

Much of the testimony was by deposition taken before trial.

The question to be determined herein is whether the cargo was properly stowed. The hides were subject to the inspection of the carrier's representatives, hide by hide, and they were admitted in the bill of lading to be "in apparent good order and condition." Upon delivery in New York, it is claimed that the hides were in damaged condition.

The master of the Bronte testified that the hides were laid out, the first tier hair down and the rest hair up; that salt furnished by the shippers had been sprinkled over the hides; and that the salt had been furnished in sufficient quantity. It appeared that the shipment of this cargo was not pickled, and he added, "It was like one of the many cargoes that I have carried, but it was the only four thousand hides that I have ever seen not pickled."

The first mate, Joseph Patterson, in the first commission, testified that the hides were stowed and salted in the usual manner, but were not pickled.

The second officer, Samuel Moffitt, testified to the same effect.

The third officer, Dawson, testified that the usual procedure in stowing the hides, in addition to salting the hides, was "to water the hides by means of a hose led from a barrel into which is fed water and brine, and to the best of my recollection this practice was carried out in Montevideo."

The foregoing testimony is significant as showing that most of the ship's witnesses admitted that no brine was used, though the custom was to the contrary.

Carlsson, the stevedore contractor, who superintended the stowing of cargoes for the respondent, testified on the second commission that no brine was used on this cargo,

for the reason that he was so instructed by De Azua, the agent of the respondent.

In this respect his testimony ties up with that of Charles F. Almon, who was the representative of the shippers at the time of the stowage. He said the hides were stowed in the usual manner with three kilos of dry Cadiz salt on each hide; and that when the 4,000 hides had been stowed, a layer or cap of salt of about six inches high was spread over them. Almon testified that no brine was used, and that such was the shippers' instruction; and accordingly he instructed the agent and stevedores not to use brine. He said his suggestions were followed and that he made no complaint as to the stowage of the hides. In this respect Almon corroborates the testimony of Chief Officer Patterson, who said that the shippers' representative superintended the loading, and on being asked why the hides were not being pickled, had replied that "the shippers did not wish them to be." Almon confirms other testimony in respect to the prevailing custom as to proper stowage, by saying: "The hides would be stowed with hair downward and flesh upward, and three kilos of salt would be laid over each hide. Between every three or four hundred hides brine would be applied from a barrel, laid upon the deck of the steamer, passing through a canvas hose. After the 4000 hides were shipped a layer of salt of six inches would be laid on top of the pile."

There is much contradiction in the testimony given by the various witnesses whose depositions were taken; and one cannot escape the inference that most of it was based, not on memory of the actual shipment, but rather on the prevailing custom. From it all, however, I reach the conclusion that salt was furnished by the shipper, as was the custom, and probably in sufficient quantity. I see no reason for believing that a salt cap of a sufficient thickness was not laid, as required also by the custom.

But I think it may fairly be inferred that no brine was used. The custom required that brine should have been used, and, therefore, the question narrows itself down to this: Is the ship to be excused from the failure to stow properly because the stowage was carried out following the suggestions of the shippers?

The libelants rely on The Skipsea (C. C. A.) 9 F.(2d) 887, 889. The court had to construe a bill of lading which had stamped thereon the clause: " 'The shippers, being satisfied with the stowage and with the conditions of carriage, release the ship from all responsibility for deterioration of the said goods.' " The court held that this would not prevent recovery in view of section 3 of the Harter Act (46 USCA § 192). It said: "A stipulation that undertakes to exempt the ship from loss or damage arising from its negligence is void as against public policy. It is an effort to indirectly exempt itself from liability which it cannot stipulate directly. Calderon v. Atlas S. S. Co., 170 U. S. 272, 18 S. Ct. 588, 42 L. Ed. 1033; The Turret Crown (C. C. A.) 297 F. 766; The Hadji (C. C.) 20 F. 875."

But the facts here do not fall within the facts or principle of The Skipsea. The respondent herein does not seek to avoid liability because of any stipulation in the bill of lading to exempt it from liability for its own negligence. In the circumstances adduced by the proof, I think it may reasonably be found, and I do find, that the damage to the hides resulted from the failure to follow the approved custom which prescribed the use of brine; but it was the shippers' fault and not the respondent's that brine was not used. Clearly, there is no proof of negligence on the part of the carrier.

The Harter Act, § 3, title 46, U. S. C. § 192 (46 USCA § 192), prescribes relief from liability, "for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative. * * *"

The respondent's representatives could not avoid following the shippers' instructions as to stowage, for the reason that the hides might have been so treated in the frigorifico that the application of brine might have been harmful.

Since there is nothing in the proofs to explain the alleged damaged condition of the hides other than the failure to use brine, in the circumstances the libel must be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.